EVELINE WIER v. THE ST. LOUIS, FORT SCOTT & WICHITA RAILROAD COMPANY.

EMINENT DOMAIN — *Compensation* — *Assessment* — *Time of Valuation.* A railroad company entered upon the land of another and constructed a railroad by consent, and upon an agreement whereby certain conditions were subsequently to be performed by the company. Both parties treated the taking of the land as a permanent appropriation for a right-of-way, and about four years later the land-owner, claiming that the railroad company had not performed the conditions of the contract, instituted condemnation proceedings to obtain compensation for the land taken. *Held,* That the compensation, if any is due, must be ascertained and assessed as of the time when the company first took possession of the land and occupied it as a right-of-way, rather than of the period of the condemnation proceedings.

*Error from Bourbon District Court.*

THIS was a condemnation proceeding, begun on March 7, 1885, by *Eveline Wier*, to appraise the value of certain lands appropriated in 1881 by the *St. Louis, Fort Scott & Wichita Railroad Company*, for a right-of-way, depot grounds and stock yards, and to assess the damages to her adjacent land, resulting from the construction of the railroad at that time. The commissioners appointed by the judge of the district court reported after an inspection that Eveline Wier was entitled to damages from the railroad company in the sum of $2,000. From this award both parties appealed to the district court, where their appeals were consolidated and tried as a single action. The cause was referred to a referee, who was authorized to make findings of fact and conclusions of law. A trial was had before the referee, and afterward, on the 16th day of September, 1886, he filed his report, which is as follows:

"FINDINGS OF FACT.

"1. In the year 1868, patents were issued by the United States to George Wier, for the southeast quarter and the southwest quarter of section 2, and the northwest quarter of section 24, all in township 25, of range 21, in Bourbon county, Kansas.

"2. On March 25, 1878, said southwest quarter of section 2, and said northeast quarter of section 24, were conveyed by deed by said George Wier to his wife, the plaintiff, Eveline Wier.

"3. On the 26th day of October, 1878, the said George Wier died intestate, leaving as his only heirs, his widow, the plaintiff, and his son, Charles Wier.

"4. In the spring of the year 1881, the defendant located the line of its railroad across the lands above described.

"5. The defendant, the St. Louis, Fort Scott & Wichita Railroad Company, was a corporation managed and controlled, from the time the construction of its road was commenced till about the 10th of March, 1882, by A. M. Ayers, Francis Tiernan, J. D. Hill, and Ira D. Bronson. Ayers was president; Tiernan, vice president; Bronson, secretary and treasurer; and Hill, general attorney and superintendent. Each of said persons was a general agent of the corporation, and fully authorized to make contracts for right-of-way.

"6. During the spring of 1881, a parol agreement was made between the plaintiff and the defendant, acting through said officers, principally Bronson, to the effect that plaintiff would give the defendant the right-of-way over all of said lands for said railroad, in consideration of the location and construction of a depot, side-track, and stock yards on said S.W. $\frac{1}{4}$ of sec. 2, and of passes over said railroad, to be given by said railroad company to the plaintiff and said Charles Wier, so long as said persons should retain control of said road, or be able to procure passes from the company. The depot, side-track and stock yards were to be built as soon as the railroad should be built through the county, and the bonds of Marion township delivered, and were to be so built and located in order to facilitate the building of a town on said quarter-section of land. It was then understood that Mrs. Wier would lay off a town-site on said quarter-section.

"7. With this understanding, the defendant, without any objection from the plaintiff, went onto said lands and constructed its railroad over and across said three quarter-sections of land. Said railroad was completed through said county, and the cars were running from Fort Scott to Iola on the 1st of July, 1881. The railroad company received the bonds of said Marion township very soon thereafter. The evidence does not show the exact date of the delivery of these bonds, but they were without doubt delivered in July, 1881.

"8. After the railroad was completed through the county, and the railroad company had received the bonds of Marion township, the plaintiff requested the officers of the company to build the side-track, depot, and stock yards, as they had agreed to do, but nothing had been done toward their construction up to September 27, 1881. A short time before September 27, 1881, the plaintiff went to Mr. Bronson and inquired when the depot would be built. She was told by Bronson to go to Tiernan. She then went to Mr. Tiernan, and he told her they would not build a depot on her land unless she would give them half the town-site.

"9. The railroad company refused to comply with any of the terms of the parol agreement mentioned in the sixth finding, and said agreement was, by the acts of said defendant, entirely abrogated.

"10. On the 27th day of September, 1881, a new agreement was made between the plaintiff and the defendant, to the effect that the plaintiff and her son, Charles Wier, should execute a deed to the railroad company for the right-of-way

over all of said lands, and for two and a half acres of ground
for stock yards, and should also execute a deed for a three-
eighths interest in the town-site of Bronson to Ayers, Tiernan,
and Hill. It was agreed that these deeds should be placed in
escrow with Judge Margrave, in Fort Scott, to be delivered to
the grantees on compliance with their part of the contract.
The railroad company agreed to build a side-track and depot
on the S.W. ¼ of said sec. 2, at a place agreed on, and stock
yards on the west half of said quarter-section, on or before
the 1st day of January, 1882. This agreement was made by
the plaintiff in person, and the railroad company, through
Tiernan, Ayers, and Bronson.

"11. In pursuance of this agreement, the plaintiff and
Charles Wier, on the 27th of September, 1881, executed two
deeds; one to the St. Louis, Fort Scott & Wichita Railroad
Company, for a strip of land one hundred feet wide, over and
through the south half of section 2, town 25, range 21, and
over and through the northeast quarter of section 24, town
25, range 21, and upon which the St. Louis, Fort Scott &
Wichita Railroad is now located, and being fifty feet on either
side of the center of the railroad track. Also a piece of land
situated in section 2 aforesaid, described by metes and bounds
as follows: 'Commencing at the point where the south line
of said right-of-way crosses the east line of the west half of
the southwest quarter of section 2 aforesaid, running thence
south twenty rods, thence west twenty rods, thence north to
the south line of said right-of-way, thence along said south
line of said right-of-way to the place of beginning, being 2½
acres, more or less, in Bourbon county, Kansas.' The other
deed was to Alexander M. Ayers, Francis Tiernan and J. D.
Hill, for 'the undivided three-eighths interest in and to the
southeast quarter and south one-half of northeast quarter, all
in southwest quarter of section 2, town 25, range 21, except
the right-of-way of the St. Louis, Fort Scott & Wichita Rail-
road, it being the intention of the parties hereto to convey a three-
eighths interest in and to the town-site to be platted on said
described land, to be known as Bronson, in Bourbon county,
Kansas.' This last deed was made for three-eighths of the
land, because Bronson declined to take any share of this land,
but desired Mrs. Wier to retain the one-eighth which would
have been his share if the deed had conveyed one-half of the
town-site. These deeds were, in accordance with the agree-
ment mentioned in the 10th finding, deposited as escrows with

Judge Wm. Margrave, together with a written memorandum showing the terms of said agreement, as follows:

"'FORT SCOTT, KANSAS, September 27, 1881.—The two deeds made by Mrs. Eveline Wier and Mr. Charles Wier, one to the St. L. F. S. & W. Rld. Co., and the other to Alexander M. Ayers, Francis Tiernan and J. D. Hill, are to be left with Judge Margrave in escrow until the said railroad company shall have put in a side-track on the S.W.¼ of section 2, town 25, range 21, and also built a depot thereon and constructed cattle yards thereon, on or before January 1, 1882, at which time, and on the completion thereof, said deeds shall be delivered to the grantees mentioned therein.'

"This memorandum was not signed by any person, but was written by Bronson, assented to by both parties, and delivered to Judge Margrave as showing the substance of their agreement.

"12. In November, 1881, the railroad company built a side-track on said lands, as agreed. Neither depot nor cattle yards were built on said S. W. ¼ of sec. 2, on or before January 1, 1882. The only depot built on said lands was built in the latter part of January, 1882. Cattle yards were built on the north side of the railroad, on the east half of said quarter-section, immediately after the depot was built. The place agreed on by the parties for the stock yards was on the 2½-acre tract described in the deed to the railroad company.

"13. On the 1st of February, 1882, a plat of the town-site of Bronson was filed by the plaintiff in the office of the register of deeds of Bourbon county, Kansas, for record. On said plat is a dedication executed and acknowledged by plaintiff, as follows:

"'I, Eveline Wier, widow, owner and in possession of the S.E.¼ of the S.W.¼ of section 2, town 25, range 21 east, Bourbon county, Kansas, do hereby certify that I have had said lands duly surveyed and platted as a town-site by the county surveyor of said county, as shown by his certificate hereto attached; that the name of said site is Bronson, and that the plat correctly represents the streets, alleys, public grounds, lots and blocks into which said land is subdivided, together with the measurements thereof. I dedicate to the public forever, block 11, and all streets and alleys indicated in this plat. The St. Louis, Fort Scott & Wichita Railroad Company is entitled to a right-of-way 100 feet wide, as shown, but subject to be crossed by the public streets when and where necessary or convenient to the public. All lots and blocks and fractions thereof, not above dedicated to the public, I expressly reserve to myself.

"'Witness my hand, this December 15, 1881.          EVELINE WIER.'

"14. Bronson and Ayers sold their interest in the railroad about the 10th of March, 1882, and ceased to be officers of, or connected with, the defendant company. Hill continued to act as superintendent till October 20, 1882, when he also went out of the company. J. W. Miller then became general

manager of the road.   After this, with the consent of Bronson and Hill, these deeds were delivered by Margrave to Mrs. Wier's attorney, and at the same time Mrs. Wier gave Hill and Tiernan her notes amounting to $1,500, for the interests claimed by Hill, Tiernan and Ayers in the town-site, and she has since paid a part of this amount.

"15.  Neither of the two deeds mentioned in the 11th finding was ever delivered to the defendant, or to anyone for it, except to Margrave as an escrow, as before stated.

"16.  At the time the railroad was built over this land, the S.E. ¼ of sec. 2 was occupied by plaintiff as her residence, and has been so occupied ever since.   It was then cultivated and well improved, with fences, orchard, etc.   Since the construction of the railroad the plaintiff has built a new house on said quarter-section, costing $1,700, which was built in 1883, and a barn, costing about $200.   The S.W. ¼ of sec. 2 was fenced and used as a pasture just before the railroad was built.   The N.E. ¼ of sec. 24 was then vacant prairie.

"17.  About the time the depot was built, buildings were started by private persons on the town-site of Bronson, and a town containing several hundred inhabitants has since been built thereon.   The N.W. ¼ of the S.W. ¼ of sec. 2 was, when these proceedings were commenced, and still is, vacant prairie land.   The N.E. ¼ of sec. 24 was still open prairie.

"18.  On November 27, 1884, the plaintiff deeded to Charles Wier the N.E. ¼ of section 24, town 25, range 21.

"19.  January 19, 1885, Charles Wier deeded Eveline Wier, the plaintiff, the N.E. ¼ of said section 24, and the undivided half of the S.E. ¼ of said sec. 2.

"20.  On March 28, 1885, plaintiff conveyed by warranty deed to J. F. Miles, all of the southwest quarter of said sec. 2, including the town or village of Bronson, with all additions from said quarter-section, except all lots, portions of lots and tracts before sold and conveyed by plaintiff.   No mention of railroad right-of-way or stock yards is made in this deed.

"21.  The commissioners, from whose report the appeals herein were taken, were appointed on March 7, 1885.   Their notice of the time when they would proceed to appraise the land and assess the damages was first published March 12, 1885, and April 14, 1885, was fixed as the day on which they would proceed with such assessment.   The report of said commissioners is dated April 16, 1885, and was filed April 18, 1885.

"22. At the time of the conveyance from the plaintiff to J. F. Miles, Miles knew these proceedings had been instituted, and it was verbally agreed between plaintiff and Miles that the plaintiff should prosecute the proceedings to recover her damages from the defendant the same as if no deed had been made, and for her own benefit. There was no written agreement in regard to the claim for damages. It was also understood between the plaintiff and Miles that after he got all the consideration named in his deed out of the land, with interest and pay for his trouble and expenses, the overplus should be paid to Mrs. Wier.

"23. Charles Wier was a minor at the time the railroad was built. He became 21 years old on the 26th of February, 1882. As a witness on the trial of this case he disclaims any interest in this suit.

"24. The plaintiff and Charles Wier were furnished free passes over the defendant's road from the time of its construction till January 1, 1885, since which time no passes have been given them. The plaintiff traveled, during 1883 and 1884, 1,743 miles on her pass. The regular fare for that distance at that time was $61. Charles Wier, during the sam years, traveled 11,352 miles on his pass, the regular fare for which travel was $397.32.

"25. About 180 rods of hog-tight fence, costing $277, and 131 rods of other fence, worth $58.95, were built by the defendant on the plaintiff's land, in consideration of the plaintiff relinquishing certain claims she had against the defendant for hogs killed and damages by fire. The building of these fences had nothing whatever to do with the plaintiff's claim herein.

"26. The plaintiff never accepted what was done by defendant as a compliance with said escrow agreement, nor waived her right to the performance thereof, and has at various times since said deeds were returned by Judge Margrave, sought to obtain a settlement from the railroad company for the right-of-way over her lands; but no settlement has ever been effected, nor has any payment ever been made to her for the value of the land taken or the damages to adjacent lands.

"27. The value of the land taken by the defendant, and the damages to adjacent lands of said plaintiff, were, on April 18, 1885, as follows:

Value of the strip of land 100 feet wide across the southeast quarter of said section 2, containing about 5½ acres, occupied by defendant as its right-of-way.............................. $250
Damage to said quarter-section of land....................... 1,000

Statement of the Case.

Value of the strip of land 100 feet wide across the northwest
quarter of the southwest quarter of said section 2, occupied
by defendant for right-of-way, containing about 3⅗ acres...  $100.
Damage to said northwest quarter of southwest quarter of sec-
tion 2.....................................................  150
Value of strip of land 100 feet wide through said town-site of Bron-
son, containing about 3⅗ acres..........................  1,500
Damage to said town-site...................................  None.
Value of grounds occupied by stock yards, 110 feet by 105 feet, in
block 3 in Bronson.......................................  200
Damage to block 3.........................................  150
Value of strip of land 100 feet wide across the northeast quarter
of said section 24, containing about 4¼ acres, occupied as
right-of-way............................................  60
Damage to said northeast quarter of section 24..............  100

"CONCLUSIONS OF LAW.

"1. The defendant has acquired no title to any of the land
occupied by it for a right-of-way over said three quarter-sec-
tions of land, except through the town-site of Bronson.

"2. The defendant has no title to the grounds occupied by
it for stock-yards in said town of Bronson.

"3. When the plaintiff executed, acknowledged, and filed
the plat of the town-site of Bronson, she dedicated the strip
of ground through said town-site occupied by the defendant
for a right-of-way to said defendant for such purpose, and
that said defendant, by such dedication, acquired a right-of-
way 100 feet wide through said town-site.

"4. At the time these proceedings were instituted, the
plaintiff was, and still is, entitled to have the value of said
lands appraised and her damages assessed, as sought by these
proceedings, except as to the right-of-way through said town-
site of Bronson.

"5. The value of the lands of plaintiff taken by defendant
as aforesaid should be appraised, and damages to adjacent
lands of plaintiff should be assessed by the court as follows:

Value of strip of land 100 feet wide across the southeast quarter
of sec. 2, town 25, range 21, Bourbon county, Kansas, contain-
ing 5½ acres, occupied by defendant as a right-of-way for its
railroad..................................................  $250
Damages to said southeast quarter of said section.............  1,000
Value of strip of land 100 feet wide across northwest quarter of
southwest quarter of said sec. 2, occupied by defendant as a
right-of-way for its railroad, containing 3⅗ acres...........  100
Damages to said northwest quarter of southwest quarter of sec. 2..  150
Value of ground occupied by stock yards, 110x105 feet, in block 3
in Bronson...............................................  200
Damage to said block 3....................................  150
Value of strip of land 100 feet wide across the northeast quarter of
sec. 24, in said tp. 25, of range 21, occupied by defendant as
a right-of-way for its railroad, containing 4½ acres.........  60
Damage to said last-named quarter-section...................  100

Total value of land and damages....................  $2,010

"And that said plaintiff is entitled to interest on said sums at the rate of seven per cent. per annum from the 18th day of April, 1885.

"6. A general judgment should be rendered in favor of the plaintiff against the defendant for all costs of this action, and of the proceedings from which the appeals herein were taken."

Accompanying the report was a bill of exceptions, which was allowed by the referee. By consent of parties, Hon. HIRAM STEVENS was selected as judge *pro tem.* for the trial of the case in the district court. The plaintiff moved the court to modify the report of the referee in certain particulars, and the defendant filed a motion to set aside the report and to grant a new trial and rehearing of the case; and among the grounds stated in the motion are: That there were irregularities in the proceedings of the referee; errors of law occurring at the trial and excepted to at the time; that the findings of fact were not sustained by and were contrary to the evidence; that the conclusions of law were erroneous and not supported by the findings; that excessive damages were allowed; and that the referee failed to find upon all the material questions included in the case. Upon a rehearing, the motion of plaintiff to modify was denied, and the motion of defendant was sustained, and the report was set aside and a new trial of the action granted. The plaintiff excepted to these rulings and to the judgment of the court, and brings the case here for review.

*J. D. McCleverty,* for plaintiff in error.

*J. H. Sallee,* and *J. H. Richards,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The St. Louis, Fort Scott & Wichita Railroad Company constructed its railroad through the county of Bourbon, and over certain lands of Eveline Wier, in the early summer of 1881. The company took and occupied land of the plaintiff's for a right-of-way, depot grounds and stock yards, with her consent, and upon agreements whereby certain conditions were subsequently to be performed by the railroad company. The terms of the agreement or agreements made

are now the subject of dispute. The plaintiff claims that the conditions were not observed or performed by the company; and in March, 1885, nearly four years after the building of the railroad, she instituted proceedings to obtain compensation for the land so taken and occupied. The railroad company alleges that it obtained from the plaintiff the right to use the land for railroad purposes in consideration of the location of its side-tracks and depot, and the building and location of stock yards upon the plaintiff's premises, and also the building of hog-tight fences along the right-of-way; which side-tracks, depot, stock yards and fences were so located by the company; and for the further consideration of the issuance to the plaintiff and her son, Charles Wier, of two passes over the defendant's line of road. The plaintiff admits that these were the considerations upon which the land was conveyed, but claims that the stock yards were not built upon the identical place agreed upon, and that by the terms of the agreement the depot was to have been completed upon January 1, 1882, whereas it was not finished until the latter part of the same month; and therefore that the railroad company forfeited its right to the land under the agreement. The company answers that there was a substantial compliance with the terms of the agreement, and that a strict compliance therewith has been waived by the acts and conduct of the plaintiff.

The referee to whom was referred the issues of law and fact in the case found in favor of the plaintiff, except as to the right-of-way through the town-site of Bronson; and with respect to that the finding is that the plaintiff, by acknowledging and filing a plat of the town-site of Bronson, in which she stated that the railroad company was entitled to a right-of-way 100 feet wide as shown upon the plat, thereby dedicated the right-of-way through the town-site, and that by such dedication the defendant acquired a right to the same for a right-of-way. The report of the referee was set aside and a new trial granted upon a motion which contained numerous grounds, and we are unable to ascertain from the record the grounds upon which the ruling was placed.

If any of the reasons assigned are sufficient, the ruling of the district court in granting a new trial will not be interfered with. Among the objections made to the report of the referee, and one of the principal ones, is that the damages were not assessed upon a correct measurement. Witnesses were permitted to testify what the damages were at the time of the condemnation proceedings, and the damages were assessed by the referee as of April 18, 1885, the time when the report of the commissioners in this proceeding was filed. In this respect the referee was in error. The damages, if the plaintiff was entitled to any, should have been fixed as of the time when the property was taken and appropriated by the railroad company, instead of the time when this condemnation proceeding was had. The company entered upon and used the plaintiff's land with her consent, and although it has had the actual possession of the land for years the plaintiff has never treated the company as a trespasser. In fact, both parties have always treated the entry upon and the occupancy of the land as a permanent appropriation. Instead of bringing an action for trespass or to eject the railroad company from the land, the plaintiff simply sues for compensation; and she thus indicates that she does not now regard the possession of the company to be a trespass; but she ratifies the appropriation, and only seeks compensation for what has been taken. The general current of authorities is that in all such cases compensation should be ascertained and assessed as of the time when the property was taken. There is some diversity of opinion as to what constitutes a taking where the right-of-way is acquired by proceedings in advance of actual occupancy; but where, as in this case, the possession is taken by consent of the owner, followed by the location and construction of the road, the time of going into such actual possession is clearly the time of taking, rather than the period of condemnation proceedings, which for some reason may have been postponed. This subject has already been fully considered by this court in two cases, where it is decided that under circumstances such as are presented here the damages will be measured as of the time

when the company first takes possession of the land and occupies it as a right-of-way. ( *C. B. U. P. Rly. Co. v. Andrews*, 26 Kas. 702; *Cohen v. St. L. Ft. S. & W. Rld. Co.*, 34 id. 158. See also the numerous cases there cited.) Upon the authority of these cases, we must hold that the referee adopted an incorrect rule in fixing the damages; and we must necessarily sustain the decision of the district court in setting aside the report and in granting a new trial.

We cannot in this proceeding go further and determine whether or not compensation has been given. That question depends upon facts which are in dispute, and, as there is to be another trial, we cannot with propriety discuss them. Whether the memorandum made at the time of the execution of the deed given for the right-of-way was a distinct agreement, intended to abrogate all former obligations, or was only supplemental to the agreements already made, is a subject of controversy. While the passes stipulated for were furnished and used, and while the depot, side-track and stock yards were constructed upon the plaintiff's land, it is true that the depot was not completed until some time after the time it was stipulated to be done in the memorandum, and the stock yards were not located upon the exact portion of the premises agreed upon. The defendant claims that under the circumstances time was not of the essence of the contract; and that if it was, the plaintiff is not in a condition to insist upon a strict compliance with the conditions of the contract. It may be remarked that forfeitures are not favored by the courts. If the plaintiff allowed the defendant to proceed with the building of the depot at a later time, and the stock yards at another place, than was stipulated for, as a part of the consideration for the land, without objection, and subsequently accepted passes or other consideration for the conveyance of the land, she would hardly be in a position to insist on a forfeiture, or a strict compliance with the conditions of the contract. The testimony given upon another trial with respect to these matters may differ from that which is in the record of this case,

Life Association v. Lemke.

and therefore we are not at liberty to finally determine them on this record.

The judgment of the district court will be affirmed.

All the Justices concurring.