No. 40,334

JAMES H. COLLINGWOOD, *Appellee* and *Cross-Appellant*, v. KANSAS TURNPIKE AUTHORITY, *Appellant*.

(310 P. 2d 211)

Opinion filed April 6, 1957.

*Alex Hotchkiss,* of Lyndon, argued the cause, and *Robert M. Cowger,* of Topeka, was with him on the briefs for appellant.

*Wendell L. Garlinghouse,* of Topeka, argued the cause, and *Warren W. Shaw* and *William Hergenreter,* of Topeka, and *Harry T. Coffman,* of Lyndon, were with him on the briefs for appellee and cross-appellant.

The opinion of the court was delivered by

FATZER, J.: The Kansas Turnpike Authority, hereafter referred to as the Authority, instituted eminent domain proceedings under G. S. 1949, Ch. 26, Art. 1 (amended by Laws 1953, Ch. 200, § 1; G. S. 1955 Supp. 26-102), as authorized by G. S. 1955 Supp. 68-2006 and 68-413, by filing its petition in the district court in case No. 12,924 to have certain lands condemned for turnpike purposes.

James H. Collingwood, the appellee, hereafter referred to as the landowner, was the owner of a 157.50-acre farm subject to an oral farm lease to J. E. Collingwood, hereafter referred to as the tenant, from which the Authority sought to appropriate 11.75 acres from four separate tracts.

On August 2, 1955, appraisers appointed by the district court, gave notice to the landowner and to the tenant, and on August 18, 1955, made an appraisement of 11.75 acres taken in condemnation.

On September 14, 1955, the landowner and the tenant filed separate notices of appeal to the district court from the award of the appraisers. Three days later the Authority likewise perfected its appeal to the district court.

On February 13, 1956, the district court assigned for trial the landowner's appeal. On the following day, the Authority filed a motion in which it alleged that neither its appeal nor that of the tenant had been assigned for trial; that its appeal involved the same question and issue raised in the appeal of the landowner and

of the tenant; that the three appeals were not separable from each other and that no other person had appealed from the assessment of damages concerning the tracts of land involved. The prayer was for an order assigning the Authority's appeal for trial in its entirety as a single action to determine the sufficiency of the appraisers' award, including the issue raised by the landowner and the tenant in their separate appeals.

On February 17, 1955, the district court entered an order, "that the motion of Kansas Turnpike Authority *to consolidate the appeals* herein be and the same hereby is overruled." (Emphasis supplied.) Thereafter, the appeal was tried by a jury with the landowner as plaintiff and the Authority as defendant. No other party appeared or participated in the trial. However, during the trial the tenant testified he had farmed the land since 1947 pursuant to an oral lease with no specific date as to its termination; that he was to plant the land to wheat in the fall of 1955, harvest the crop and deliver the landowner his share, but, he did not plant wheat or any other crop that fall; that he sublet that part of the land east of the turnpike but did not sublet or farm that portion west of the turnpike because he had no access to it; and, that the land had a higher market value as a result of the farm lease. A verdict was rendered in favor of the landowner for $4,002.50. In answer to special questions the jury fixed the fair and reasonable market value of the 11.75 acres taken at $587.50, and damages for the difference in value of the land remaining immediately before and immediately after the taking at $3,415. The jury made no finding that the farm lease enhanced the value of the land.

The Authority filed its motion for a new trial on all the statutory grounds and particularly assigned as error the district court's order overruling its motion to assign for trial its appeal in its entirety as a single action, which was overruled. Thereafter, and within the time provided, the Authority perfected its appeal to this court.

The sole question here presented is whether an appeal to the district court from an appraisement in an eminent domain proceeding brought to that court in its entirety the question of the sufficiency of the award of the value of the land taken, plus the difference in value of the land remaining immediately before and immediately after the condemnation, to be tried in a single action with respect to all parties claiming or having an interest in the land appropriated.

It would serve little purpose to make extensive comment concerning the Authority's contention since the precise question here

presented was considered by this court in *Moore v. Kansas Turnpike Authority,* No. 40,335, this day decided, where it was held:

"In this jurisdiction the rule followed in the consolidation of eminent domain cases for trial is not one of substance but one of procedure (G. S. 1949, 60-765 and G. S. 1949, 60-601). Under this rule the court is not obliged as a matter of substantive law to consolidate appeals brought under the provisions of the eminent domain statute (G. S. 1949, 26-102, *et seq.,* as amended by G. S. 1955 Supp. 26-102), of all parties interested in a particular tract of land. The appeals of different parties interested in the same tract of land do not bring to the district court as a matter of substantive law a single action to be tried as such." (Syl. 2.)

It follows that the district court did not err in refusing to consolidate the appeals of the tenant and the Authority for trial with the appeal of the landowner.

We now turn to the landowner's cross-appeal. It is contended that the district court erred in refusing (1) to permit the landowner to cross-examine Ottley Mings, one of the appraisers and a witness for the Authority, as to whether he placed a different value on a part of the land condemned when he filed his appraisement report on August 18, 1955, than when he testified on direct examination; (2) to instruct the jury as requested by the landowner, and (3) to sustain the landowner's objection to instruction No. 9.

1. Ottley Mings testified on direct examination that on August 18, 1955, the fair and reasonable market value of the 11.75 acres of land condemned was $587.50; that the difference in value of the land remaining before and after the taking was $2,250.50, and, when added to the value of the land taken, was $2,818. The report of the appraisers filed August 18, 1955, fixed the value of the land taken at $1,175, and damages to the land remaining at $1,643, making a total sum allowed the landowner of $2,818. Thus, the total sum awarded the landowner by the appraisers was exactly the same amount as testified to by Mings. On cross-examination Mings was asked, "And in that report you gave a different value on the 11.75 acres than you have given today, didn't you?" Objection was made to that question, and the district court stated:

"I think the Court has some discretion as to the extent of the cross examination for the purpose of impeachment, and personally I don't think it is wise to get the subject of this report into this court at all; that is, as to the fact of its contents, and the fact there was such a report, is in evidence, and anyone with any familiarity or experience with matters of that kind can tell from the drift of the examination that there had been such an appraisement and report.

"It is the contents I feel should be excluded. I'll sustain the objection."

The landowner then offered in evidence the appraisers' report to impeach the testimony of Mings. An objection to that offer was likewise sustained by the district court.

The record clearly shows that Mings was examined on other phases of the valuation, and, except for values fixed in the appraisers' report, the district court did permit the landowner to cross-examine Mings to test his credibility. The landowner cites *Searcy v. State Highway Comm.* 145 Kan. 709, 67 P. 2d 534; *Case v. State Highway Comm.*, 156 Kan. 163, 131 P. 2d 696, and decisions from foreign jurisdictions. We need not review those authorities and further extend this opinion since the precise point presented was considered and decided by this court in *Moore v. Kansas Turnpike Authority*, supra. It was there held:

"Following *Searcy v. State Highway Comm.*, 145 Kan. 709, 67 P. 2d 534, the question of the extent to which cross-examination of a witness to impeach his credibility will be allowed is one of discretion of the trial court. In an action such as described in paragraph 1 of this syllabus the trial court did not abuse its discretion in refusing cross-examination of an appraiser witness with respect to the reasonable market value of the land taken plus the difference in value of the remaining land immediately before and immediately after the taking where his testimony as to such total value was the same as the total of such value on the appraisement report." (Syl. 4.)

Since Mings' testimony did not differ in total amount from the total amount fixed in the appraisers' report with respect to the value of the land taken plus the difference in the value of the land remaining before and after the condemnation proceedings, no prejudicial error was committed, and the district court did not abuse its discretion in refusing to permit the landowner to cross-examine Mings concerning values fixed in that report.

2. In considering the landowner's second and third contentions, further reference to the record is helpful. The turnpike right of way diagonally crossed the landowner's farm in a southwesterly direction so that approximately 100 acres were on the east side of the right of way and 45 acres were on the west side. In the same proceeding in which the Authority acquired the landowner's land, it also acquired a strip of land immediately north of his farm, and, except where such strip of land joined with an overpass of a township road over the right of way of the turnpike where it was wider, it was approximately 30 feet wide, 815 feet long, and paralleled the westerly side of the turnpike from a point near the overpass to a point on the north line of the landowner's farm. This strip of land was acquired August 18, 1955, for the benefit

of the landowner to provide a means of access by which he could reach the west 45 acres of his farm. However, before the trial commenced February 27, 1956, the Authority tendered to the land-owner, and he accepted, an easement to this strip of land for the purpose of ingress and egress to the west portion of his farm. The authority agreed to construct an unsurfaced roadway 20 feet wide from a point near the overpass to the landowner's north line and to fence such property but the duty to maintain and repair the road and fence was placed upon the landowner. Although the Authority conceded at the trial the access road had not been used or exten-sively improved prior to the trial, considerable evidence was intro-duced as to whether the landowner had suitable access to his west 45 acres, and practically every witness was interrogated by both the landowner and the Authority concerning it and its effect on the landowner's damage to the remaining land. The landowner testi-fied he had no access and here contends that title to the access road vested in the Authority on August 18, 1955, and since an easement for its use was not tendered until February 27, 1956, it would have been trespass to use it, therefore, he had no access or use of the road acquired. He requested the district court to instruct the jury the undisputed evidence showed on August 18, 1955, that the land-owner had no access to the west portion of his farm; that he was. entitled to be compensated in money for the damage inflicted by the conditions as they existed on that date; and, that the jury disregard all evidence pertaining to the access road, the easement granted February 27, 1956, and, with respect to his land remaining, assess damages as though the easement had not been made. That request was denied by the district court.

The landowner contends the proper measure of damages should be based upon the conditions as they existed at the time his land was appropriated, and cites *C. B. U. P. Rld. Co. v. Andrews*, 26 Kan. 702; *Wier v. St. L., Ft. S. & W. Rld. Co.*, 40 Kan. 130, 19 Pac. 316, and numerous other authorities. We have no quarrel with these authorities nor with the landowner's contention as being a correct statement of law. However, the requested instructions, if given, would have undoubtedly singled out a particular claim or item of damage to the landowner and give it an undue significance (*Smart v. Railway Co.*, 80 Kan. 438, 102 Pac. 253; *Hill v. Railroad Co.*, 113 Kan. 489, 215 Pac. 310; 5 Hatcher's Kansas Digest [Rev. ed.], Trial, § 213, p. 342). That instruction would have required the district

court to instruct the jury to disregard all evidence relating to the access road. Manifestly, that would have been error. The sole purpose of acquiring the access road was to benefit the landowner and provide access to his west 45 acres—that it didn't benefit the turnpike is clear. Furthermore, his right of access did not spring from the formal transfer on February 27, 1956—it accrued on August 18, 1955, consequently, he had a right to use the access road without being a trespasser (52 Am. Jur. Trespass, §§ 39, 40, pp. 866, 867; 87 C. J. S. Trespass, § 49, p. 1003). While the right of access may have been so inadequate and unsuitable as to factually amount to no access at all, his lack of ability to use the access road due to topographical or other conditions of the area was *a subject of evidence* to be considered by the jury, and was not *a question of law* to be determined by the district court. Obviously, it would have been improper to instruct the jury *as a matter of law* that the landowner had no access to his west 45 acres. Moreover, that portion of the requested instruction relating to the landowner's compensation in money for the damages inflicted by the conditions as they existed on August 18, 1955, was fully covered by other instructions of the district court. The refusal to give an instruction or a portion of an instruction in the specific manner requested is not error when the same is substantially covered by other instructions of the district court. The refusal to give an instruction or a portion of an instruction in the specific manner requested is not error when the same is substantially covered by other instructions (*Chapman v. Bergholt*, 149 Kan. 172, 86 P. 2d 513; *Boeck v. Katz Drug Co.*, 155 Kan. 656, 127 P. 2d 506; 5 Hatcher's Kansas Digest [Rev. ed], Trial, § 201, p. 337). The district court did not err in refusing to give the landowner's requested instruction.

3. The landowner's third contention is in reality a continuation of his previous argument, the effect of which was the district court did not properly instruct the jury in instruction No. 9 that damages to the land remaining were to be considered as of the time of the appropriation. The instruction reads:

"Evidence has been introduced in this case tending to show that at the same time the land in question was appropriated, defendant also condemned a strip of land on the tract immediately north of plaintiff's land, which strip extended from a point near the overpass of the township road over said turnpike to a point on the north line of plaintiff's land. If you find that the purpose in condemning said strip was to provide plaintiff with a means of access by which he could reach his land west of the turnpike, then said strip is a

matter which affected the condition of plaintiff's remaining land as it was immediately after the taking and you may consider the same for that purpose.

"It is not important that the defendant did not execute any written grant to plaintiff of the right to use said access road until the commencement of this trial. By accepting this grant, however, the plaintiff did not waive any question as to any hazard or inconvenience in connection with the the the use of said access road or its sufficiency, or the cost of maintaining such access road or necessary improvements thereto, and you should consider what may be shown by the evidence in regard to such matters in determining the value of plaintiff's remaining land as it was immediately after the taking."

We do not believe instruction No. 9 was susceptible to the landowner's objection. In *Casner v. Common School District No. 7*, 175 Kan. 551, 265 P. 2d 1027, it was said:

". . . It is a cardinal rule in this state that instructions to the jury must be considered as a whole, and all must be considered to determine whether the theory and contentions of each party are presented, and an erroneous instruction does not of itself require reversal if all the instructions considered together substantially state the law of the case. (*Wing v. Mid-Continent Seeds*, 170 Kan. 242, 246, 225 P. 2d 78; 5 Hatcher's Kansas Digest [Rev. Ed.], Trial, § 186; 9 West's Kansas Digest, Trial, § 295 [1].)" (l. c. 556.)

When all of the instructions are considered together we think the theory and contentions of the landowner, as well as the Authority, were fairly presented to the jury. Instruction No. 6 informed the jury the date of the taking was August 18, 1955; Nos. 7 and 8 clearly stated that damages to the land remaining was the difference in value immediately before and immediately after the taking; and No. 9 left to it the weight and credence to be given to evidence introduced as to whether the Authority condemned such strip of land to provide a means of access by which the landowner could reach his west 45 acres, and that if it did so find, then that fact was a matter which affected the condition of the land remaining and was to be considered in determining the landowner's damages. In addition, the instruction emphasized that the time of computing the damage was "as it was immediately after the taking and you may consider the same for that purpose." Moreover, it is particularly significant that this instruction clearly informed the jury that by accepting the easement, the landowner did not waive any question as to any hazard, or inconvenience in connection with the use of the access road, or its sufficiency, or the cost of maintaining such road, or necessary improvements thereto, and directed the jury that it should consider from the evidence such matters in determining the value of the land remaining.

After carefully reading all of the instructions given by the district court we are convinced that they fairly presented to the jury the landowner's theory and contentions, and did for him what he claims they did not do. We have no hesistancy in concluding the district court did not err in any of its instructions to the jury, and particularly instruction No. 9.

The landowner lastly contends the district court erred in overruling his motion for a new trial. In view of the conclusions heretofore set forth in this opinion, suffice it to say we think the district court did not err in overruling that motion.

We have carefully reviewed the record and find no error. The judgment is affirmed.

WERTZ, J., dissents.

FATZER, J.: (dissenting) I am unable to concur in the construction placed upon G. S. 1949, 26-101, G. S. 1955 Supp. 26-102, 68-413 and 68-2006, and dissent from ¶ 1 of the syllabus and the corresponding portion of the opinion. The views stated in the dissenting opinion of *Moore v. Kansas Turnpike Authority*, No. 40,335, this day decided, briefly set forth my views on the question. To reiterate them here is unnecessary and reference to that opinion is made for the grounds of my dissent.