No. 43,240

DELTON E. KETTLER, *Appellee*, v. ALBERT W. PHILLIPS *Appellee*, and FRANK C. JAMES, *Appellant*.

(382 P. 2d 478)

Opinion filed June 8, 1963.

*James W. Sloan* and *Jerry W. Hannah*, both of Topeka, argued the cause, and *Eldon Sloan, Myron L. Listrom, Clayton M. Davis,* and *Mark L. Bennett,* all of Topeka, were with him on the briefs for the appellant.

*T. M. Murrell,* of Topeka, argued the cause, and *George A. Scott* and *Jack A. Quinlan,* both of Topeka, were with him on the briefs for the appellee, Delton E. Kettler.

*Philip H. Lewis*, of Topeka, argued the cause, and *O. B. Eidson, James W. Porter, E. Gene McKinney*, and *Charles S. Fisher, Jr.*, all of Topeka, were with him on the briefs for the appellee, Albert W. Phillips.

The opinion of the court was delivered by

HATCHER, C.: This appeal stems from an action brought against the drivers of two automobiles whose alleged concurrent negligence caused injury to a third.

The general facts, which are not in serious dispute, may be summarized.

The collision occurred at approximately 3:30 P. M., October 29, 1960, on Highway K68 at the Bull Creek Bridge north and west of Paola, Kansas. Highway K68, designated as black top surface, is twenty-two feet in width. Bull Creek Bridge is fifteen feet, four inches in width, one hundred feet long and is posted as a one-lane bridge. There were rails protecting the approach which narrowed from the width of the highway to the width of the bridge. The highway was wet as the result of a recent rain.

The defendant, Frank C. James, was driving in a westerly direction and entered the bridge from the east without slackening his speed. He attempted to slow down but missed his foot brake. The defendant, Albert W. Phillips, was driving in an easterly direction and approached the bridge from the west. The plaintiff, Delton E. Kettler, was driving some distance behind the Phillips automobile. Phillips applied his brakes and approached or entered the approach to the bridge at a very slow speed. As James approached Phillips' automobile, he swerved his automobile to the right striking a guard rail. This caused his automobile to skid to the left and collide with the Phillips automobile. This occurred about twenty-six feet from the west end of the bridge. At this point James lost control of his automobile which traveled some two hundred feet down the road where it collided with the automobile being driven by Kettler. Kettler had pulled onto the right-hand shoulder of the highway and had come to a stop.

Following a trial of the issues the jury returned a verdict in favor of the plaintiff and against the defendant James in the amount of Twenty-Three Thousand, Two Hundred and Fifty Dollars. It also returned a verdict in favor of the defendant Phillips for his costs.

The defendant James filed motions for judgment notwithstanding the verdict, to set aside findings of the jury, and for a new trial.

The motions were overruled and James has appealed specifying numerous trial errors.

Appellant first claims error because of the trial court's refusal to permit witnesss Pivonca, a state trooper, to give his opinion as to whether the point of impact between the automobiles of James and Phillips occurred within the one-lane area.

The objection is without merit. The witness testified as to the width of the bridge; that the point of impact of the Phillips and James automobiles was twenty-six feet west of the west end of the bridge; that the roadway at the point of impact was eighteen feet wide, and that there was nothing to indicate that the Phillips automobile had crossed the center line of the road.

Any opinion of the witness as to whether Phillips' automobile had entered the one-lane area could be nothing more than an opinion dealing with a question which was for the jury's determination—was Phillips negligent in entering the approach to the one-lane bridge?

The appellant complains of the refusal of the trial court to give requested instructions. One request was as follows:

"You are instructed that for traffic control purposes, the term 'bridge' includes not only the structure spanning a river, creek or ravine, but also includes approaches by which access to the bridge is obtained. Such approaches being as much a part of the appendages to the bridge as the bridge itself."

Appellant cites authorities defining the term "bridge" as including the approaches. There may be situations in which the approaches should be considered as a part of the bridge. Liability for improper construction, maintenance or repair would present fair examples. However, a wide approach is not necessarily part of a narrow one-lane bridge when considering whether the driver of an automobile negligently entered a one-lane area.

One of the questions for the jury's consideration was whether appellee Phillips entered or approached too close to the one-lane area. Any instruction that included all of the approach as part of the narrow bridge would have confused the jury on the issue.

An instruction, although correct, should not be given on issues not involved in the lawsuit. (*Randle v. Kansas Turnpike Authority*, 181 Kan. 416, 312 P. 2d 235.)

Other instructions requested by the appellant were sufficiently covered by the instructions given. A court should not single out a particular theory or circumstance and give it undue emphasis,

even though the requested instruction correctly states the law. Requested instructions are properly refused where the substance is contained in the instructions given. *Kurdziel v. Van Es,* 180 Kan. 627, 306 P. 2d 159; *Collingwood v. Kansas Turnpike Authority.* 181 Kan. 43, 310 P. 2d 211, on rehearing 181 Kan. 838, 317 P. 2d 400; *Board of Park Commissioners v. Fitch,* 184 Kan. 508, 337 P. 2d 1034; *City of Wichita v. Depee,* 185 Kan. 22, 340 P. 2d 924; *Millers' Nat. Ins. Co., Chicago, Ill., v. Wichita Flour M. Co.,* 257 F. 2d 93; *Williams v. Hendrickson,* 189 Kan. 673, 371 P. 2d 188; *Goldman v. Bennett,* 189 Kan. 681, 371 P. 2d 108.

The appellant contends that the jury's answer to special questions acquitted him of all negligence charged in the petition.

The petition contained allegations of failure to exercise due care, failure to have automobile under control, and failure to slow down. The jury in answering the question as of what the negligence consisted, stated:

"Negligent carelessness. Failing to drive at a speed safely required for protection of interest of other persons which may cause injury."

We can find very little distinction between the phrase "failure to slow down" and "failure to drive at a speed safely [safety] requires." The rule of consistency, in the negligence charged in the petition and the negligence found by the jury, does not require that the same adjectives, adverbs, or phrases be used. The rule is satisfied if the language used is reasonably synonymous.

". . . [A] jury of laymen is not required to answer special questions in the precise language used by a lawyer in drafting a pleading. . . ."

(*Spencer v. Eby Construction Co.,* 186 Kan. 345, 350, 350 P. 2d 18. See, also, *Moorhouse v. Robbins,* 145 Kan. 157, 64 P. 2d 5, and *Jacobs v. Hobson,* 148 Kan. 107, 79 P. 2d 861.)

The appellant claims error because of misconduct of the jury. It appears that one of the jurors referred to a dictionary while at home overnight during the jury's deliberations. He "looked up" several definitions, including the word negligence, and made notes. He read the notes to the other jurors after they had reached a verdict but before they retired from the jury room. He did not know whether the foreman used his notes in writing the answers to special questions. He followed the court's instructions as to the definition of the word "negligence."

The record does not establish with any definiteness that the dictionary definition was used in arriving at a verdict. The most

that can be said is that the dictionary definition might have influenced the jury. This is not sufficient to satisfy the rule that a judgment will not be reversed unless it appears that substantial rights of the complaining party have been prejudiced.

The juror used "Webster's Dictionary," "a regular school dictionary." The definition which the juror copied is not disclosed by the record. However, the definition of the word negligence is found in Webster's New Twentieth Century Dictionary Unabridged contains nothing which would be inconsistent with the definition as set forth in the court's instructions.

The question is governed by the decision of this Court in the case of *Pulkrabek v. Lampe*, 179 Kan. 204, 293 P. 2d 998. The court stated in the opinion:

"Once the true rule for determining whether the trial court properly concluded the misconduct complained of did not require the granting of appellant's motion for a new trial it becomes obvious the sole question remaining is whether the record as presented affirmatively establishes that her substantial rights were prejudiced by the jury's having procured the dictionary and read the definition of the word 'proximate' appearing therein. In approaching a decision on this question it must be kept in mind it is conceded that neither the court, the appellees nor the appellant had anything to do with the jury's action; that no one contends such action was influenced by bad faith or a desire on the part of the jury to work injustice as between the parties; and that the court, without objection by either party, had previously instructed the jury that 'Proximate cause is that cause which in a natural and continuous sequence, unbroken by any new independent cause, produces the result complained of, and without which the result and injury would not have occurred.'

"Upon careful analysis of the heretofore quoted dictionary definition of the word 'proximate' and the trial court's instruction regarding 'proximate cause' we find nothing in the term 'proximate,' as defined, which can be regarded as inconsistent with the concept of 'proximate cause' as set forth in the instructions. It follows we would not be warranted in holding that in and of itself the mere fact the jury read such definition is sufficient to make it affirmatively appear the substantial rights of the appellant were prejudiced by that action.

. . . . . . . . . . . . .

"We believe there is another sound reason for reaching the conclusion just announced. From the record presented it appears that the trial court, which we pause to note was in much better position to pass on the situation than this court, was convinced that the misconduct of the jury was not such that prejudice therefrom resulted against the appellant. In that situation the general rule, with respect to the disturbance of a ruling such as is here involved, is well established. See 39 Am. Jur., New Trial, 87 § 73, which reads:

" 'The refusal or denial of a motion for a new trial for alleged misconduct on the part of the jury is, as a general rule, a matter within the discretion of the judge presiding at the trial; and unless it appears that this discretion has been abused, that there has been palpable error, or that the judge has refused to review and consider the evidence by which the consideration of the motion should have been guided or controlled, his refusal to grant a new trial will not be disturbed. . . .' " (pp. 208, 209, 210.)

The appellant contends that the verdict in the amount of twenty-three thousand two hundred and fifty dollars is excessive. Appellee Kettler was a man thirty years of age. There was medical testimony to the effect that his injuries, diagnosed as lumbo-sacral sprain, a possibility of disc pathology of the lumbo-sacral disc and trumatic neurosis, were the result of the accident. He was carrying on rather large farm operations but is now unable to do heavy work. He can work only three or four hours per day. He has greatly curtailed his operations.

The verdict would not appear to be excessive under the facts disclosed by the record.

In *Neely v. St. Francis Hospital & School of Nursing,* 188 Kan. 546, 363 P. 2d 438 it is stated:

". . . This court fully and clearly set out the manner in which the question of excessiveness of a verdict should be considered in *Domann v. Pence,* 183 Kan. 135, 325 P. 2d 321, where it was stated:

" 'In the nature of things, it is impossible to formulate a hard and fast rule on the question of the amount of damages to be allowed in a personal injury action for the simple reason that determination of the matter necessarily depends upon the facts and circumstances of each particular case.

" 'Generally speaking, it may be said that no verdict is right which more than compensates, and none is right which fails to compensate. Pain and suffering have no known dimensions, mathematical or financial, and there is no exact relationship between money and physical or mental injury or suffering, and the various factors involved are not capable of exact proof in dollars and cents. For this very practical reason the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation for the injuries sustained, and the law has entrusted the administration of this criterion to the impartial conscience and judgment of jurors, who may be expected to act reasonably, intelligently and in harmony with the evidence.' ( Syl. ¶¶ 2, 3. )

"On the record before us we cannot say the amount of the verdict is such as to shock the conscience of the court and we therefore hold the verdict was not excessive.

The appellant's most serious complaint is lodged against a written instruction given by the court during the jury's deliberation and in the absence of counsel. The jury began its second day of

deliberation at 9:00 o'clock A. M. At 10:00 o'clock it sent a note to the court asking:

"Can we hold Mr. Phillips partly but less responsible than Mr. James."

The court wrote on the note,

"No, 1-11-62 10:02 a. m.
  Marion Beatty"

and returned it to the jury.

The appellant contends that the instruction was not only erroneous but that it was improperly given without requiring the jury to return to the court room and receive the proper instruction in the presence of counsel.

The appellants specific complaint is that the instruction caused the jury to render a verdict in favor of his codefendant Phillips. The matter is not properly before this court for consideration.

The only manner in which the release of Phillips could affect the appellant would be in his right to contribution after judgment was rendered. The liability of the appellant to appellee Kettler would not be affected by a verdict for or against Phillips.

The appellee Kettler made no objection to the verdict rendered in favor of appellee Phillips and took no appeal from the verdict or judgment in his favor. The appellant in the court below made no objection to the verdict in favor of Phillips. Appellant's specifications of error make no complaint of the verdict and judgment in favor of Phillips. The verdict and judgment in favor of Phillips has become final in the absence of an appeal therefrom. Appellant's objection to an instruction favoring his codefendant did not lessen his liability to appellee Kettler.

If appellant desired a new trial in order that his codefendant Phillips be kept in the case for the purpose of contribution after judgment, he should have objected to and perfected an appeal from the verdict and judgment in favor of his codefendant. The granting of a new trial at this stage of the proceedings would not accomplish the appellant's purpose.

Pennsylvania is one of the few states in which a defendant is permitted to challenge the judicial release of a codefendant. *Schwartz v. Jaffe*, 324 Pa. 324, 188 Atl. 295.) However, it is required that timely objections be made to the verdict in favor of the codefendant. In *East Board Top Transit Co. v. Flood*, 326 Pa. 353, 192 Atl. 401, the court stated:

"The trouble with the position in which appellant finds itself is that, neither at nor after the trial, did it avail itself of its right to insist upon a verdict fixing the status of the individual defendant [codefendant]; it has therefore only itself to blame for the situation of which it now complains. The rendering of a verdict is subject to the same rules in regard to objections, exceptions and waivers as apply to all other parts of the trial. . . . Since appellant remained silent, and without complaint allowed the jury to be discharged, it would manifestly be unfair to plantiff to grant a new trial after a recovery of a verdict against appellant on the merits of the case. . . ." (p. 357.)

It should be understood that in disposing of the above question the court is not passing on the right of a defendant to object to a codefendant being released from liability by erroneous rulings of the court. Neither is the court passing on the propriety of the instruction in question or the manner in which it was given.

A careful examination of the record discloses no reason why a new trial should be granted.

The judgment is affirmed.

APPROVED BY THE COURT.