No. 40,592

ADAM KLEPPE, *Appellee*, v. WEBB PRAWL and IOWA HOME MUTUAL CASUALTY COMPANY, a Corporation, *Appellants*.

(313 P. 2d 227)

Opinion filed July 3, 1957.

*J. W. Lowry*, of Atchison, argued the cause, and *Steadman Ball, Wm. E. Stillings*, and *Robert D. Caplinger*, all of Atchison, and *Jack R. Euler*, of Troy, were with him on the briefs for the appellants.

*Robert A. Reeder*, and *George T. Van Bebber*, both of Troy, argued the cause and were on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from a judgment based upon a jury's

verdict in a tort action for damages as a result of personal injuries caused by a negligent wrongdoer.

For clarity in this opinion the plaintiff and defendant will be referred to as they were in the court below and it will not hereafter be necessary to mention the Iowa Home Mutual Casualty Company, defendant's liability insurance carrier, although it is, of course, one of the appellants.

The first amended petition, hereafter referred to as the petition, was challenged by a general demurrer and a special demurrer on the grounds the allegations thereof disclosed plaintiff, *as an employee,* voluntarily assumed the risk of his employment by defendant, and further, that plaintiff was guilty of contributory negligence proximately causing his injury and resulting damage. By reason of these demurrers we will briefly summarize the pertinent allegations of the petition which showed that defendant operated his cattle truck under licenses of the Interstate Commerce Commission and the Kansas Corporation Commission. On or about September 10, 1955, plaintiff, at his place of residence, was assisting defendant in loading hogs into defendant's truck. The hogs were owned equally by plaintiff and Lawrence Gilmore. Defendant had backed his truck to within approximately six feet of a barn doorway from which the hogs were to be loaded into the truck by means of a movable chute. Defendant saw the chute was too short and stated he would back up *two feet further.* Plaintiff was to stand behind the truck and tell defendant when he had backed "a couple of feet." As directed, plaintiff stood behind the truck while defendant backed it and when the approximate distance of two feet had been covered, plaintiff shouted for defendant to stop. Defendant paid no attention to plaintiff's shouted commands but continued carelessly and negligently to back the truck at an increasingly high rate of speed. Plaintiff yelled for him to stop but was ignored and the rearward motion of the truck was so quick, abrupt and in such complete contradiction of defendant's stated purpose to back only a couple of feet that plaintiff had no warning of danger and was unable to get out of the way. The defendant continued to back the truck until it struck the side of the barn and plaintiff was pinned between the stock bed of the truck and the framework of the barn. Plaintiff received serious injuries and lost consciousness.

Then followed allegations showing the injuries and all the elements of damages suffered by the plaintiff as a result of such in-

juries. Suffice it to say without detailing them the alleged injuries and damages were well and fully pleaded.

The section of the demurrer having to do with the elements of a general demurrer does not merit our laboring therewith and we will pass on to the discussion of the special demurrer since it raises the material questions.

We shall consider the questions raised by the special demurrer in the order in which they appear therein, notwithstanding they were treated in reverse order by the parties in their briefs. As has been frequently stated, a cardinal rule of this court is that in determining the sufficiency of a petition when attacked by demurrer, any defect must be made to appear on the face of the pleading. (*Anderson Cattle Co. v. Kansas Turnpike Authority*, 180 Kan. 749, 308 P. 2d 172; *Robinson v. Muller*, 181 Kan. 150, 309 P. 2d 651.)

Was plaintiff an employee of defendant? While the first phase of the special demurrer is limited to assumption of risk because plaintiff was an employee of defendant, the parties undertake to cover the field of voluntary assumption of risk in their briefs but we see very little, if any, difference between the application of the rule to an employer and employee situation than in any other relationship. Defendant contends that an employee may have a general employer and also a special employer at the same time. We have no quarrel with him on that point because we have so held in *Smith v. Brown*, 152 Kan. 758, 761, 107 P. 2d 718; *Beitz v. Hereford*, 169 Kan. 556, 220 P. 2d 135; *Bright v. Bragg*, 175 Kan. 404, 264 P. 2d 494. These cases could be supplemented by many more but they are sufficient. This contention, however, does not end the matter. The petition does not affirmatively show that plaintiff was an employee of defendant under the requirements for establishment of that relationship as they are set out in *Beitz v. Hereford*, supra.

Defendant argues the danger here was inherent and obvious and relies on the closely divided opinion of this court in *Horton v. Atchison, T. & S. F. Rly. Co.*, 161 Kan. 403, 168 P. 2d 928, but an examination of that case, which involved a railroad crossing with a string of boxcars on each side of the intersecting highway, fails to show the analogy between that case and this one. On this point our attention is also directed to *Carrier v. Railway Co.*, 61 Kan. 447, 59 Pac. 1075, where a brakeman slipped and fell on snow while undertaking to couple one portion of a train to another when the train was moving. His leg was run over and crushed. That case

is closer to the one under consideration than was the Horton case but yet it is not so analogous as to be controlling here. Another authority relied upon by defendant is *Cooper v. Southwestern Bell Telephone Co.*, 159 Kan. 67, 151 P. 2d 692, wherein the plaintiff was an office employee who had objected to a slack telephone cord which had been installed by the defendant company but plaintiff continued to walk close to the cord until her foot was caught in it causing her to fall and receive injury. There we find the rule (quoted from *Sweet v. Railroad Co.*, 65 Kan. 812, 70 Pac. 883, also cited by defendant) that,

"'One who, knowing all the danger and peril of pursuing a given course and being under no compulsion to encounter the same, freely and voluntarily continues therein, cannot recover damages for injuries he may suffer'." (p. 69.)

In the Cooper case the following cases were cited by plaintiff: *Walmsley v. Telephone Association*, 102 Kan. 139, 169 Pac. 197; *Carlisle v. Union Public Ser. Co.*, 137 Kan. 636, 21 P. 2d 395; *Worley v. Kansas Electric Power Co.*, 138 Kan. 69, 23 P. 2d 494; and this court, in distinguishing those cases from the Cooper case, said,

"In each of those cases the person injured *had no knowledge or notice* of the danger which eventuated in his injury. In the instant case, plaintiff was *keenly aware* of the danger of tripping over the telephone wire, even if it be assumed that it had been negligently placed by the telephone company at the location to which plaintiff objected from the inception of her employment." (Our emphasis.) (pp. 69, 70.)

It can thus be seen that the Cooper case has already been distinguished from the one here involved.

Another case cited by defendant (*Stevens v. Allis-Chalmers Mfg. Co.*, 151 Kan. 638, 100 P. 2d 723, involved a farmer of many years' experience who was injured while handling certain farm implements which had a revolving universal joint as a part of a take-off power shaft. He sought to control the machinery by a manifestly dangerous and unusual method and he was thereby injured, but he could not recover because of his assumption of risk. This case dealt with inherent and latent or patent defects in a product for which a manufacturer would or would not be liable if injury proximately resulted therefrom. We are not inclined to consider that case as controlling here.

Other cases wherein the doctrine of the assumption of risk was raised by demurrer to defeat a tort action for negligence are *Davis v. City of El Dorado*, 126 Kan. 153, 267 Pac. 7; *Parker v. City of*

*Wichita,* 150 Kan. 249, 92 P. 2d 86; and similarly in a compensation case (*Lively v. Railway Co.,* 115 Kan. 784, 225 Pac. 103).

In all these cases it is apparent the doctrine applies only where there is *knowledge and appreciation* of the danger and peril (*Railway Co. v. Bancord,* 66 Kan. 81, 71 Pac. 253). Coupled with such knowledge and appreciation there must be an element of voluntarily placing oneself in the way of such danger and peril. (38 Am. Jur., Negligence, § 173, pp. 847, 848.)

While assumption of risk is somewhat akin to contributory negligence, these two doctrines of law are not synonymous because assumption of risk arises through implied contract of assuming the risk of a known danger; the essence of it is venturousness; it implies intentional exposure to a known danger; it embraces a mental state of willingness; it pertains to the preliminary conduct of getting into a dangerous employment or relation; it means voluntarily incurring the risk of an accident, which may not occur, and which the person assuming the risk may be careful to avoid; it defeats recovery because it is a previous abandonment of the right to complain if an accident occurs. Contributory negligence arises out of a tort; the essence of it is carelessness; it may or may not imply intentional exposure to a known danger; it is a matter of conduct; a contributorily negligent act leads more immediately to a specific accident. Another difference is that assumption of risk denies defendant's negligence while contributory negligence admits defendant's negligence but denies it is the proximate cause of the accident. (65 C. J. S., Negligence, § 117, pp. 709-711; 38 Am. Jur., Negligence, § 172, p. 847.)

In pursuing his theory that the petition shows plaintiff's contributory negligence defendant further argues that a "couple of feet" was indefinite like a "couple of days" or a "couple of minutes," but we cannot agree that such a standard could be adopted here under the allegations of the petition, which definitely states *two feet.* On the contrary, the petition discloses the proficiency of defendant as an interstate and intrastate licensed truck driver, that the chute was short, and that only a slight backing of two feet was necessary to allow the use of the chute. These allegations would deny rather than admit contributory negligence was a proximate cause of the accident.

We are unable to say as a matter of law this petition discloses on its face that plaintiff had assumed the risk or was guilty of

contributory negligence so as to reverse the trial court's order over-ruling the special demurrer.

Plaintiff, who was a man fifty-nine years of age at the time of the accident, testified: He had called defendant the preceding evening to come over to take the hogs to market; when defendant arrived the next morning plaintiff got in the truck with him and they rode down to the barn where the hogs were; defendant stopped the truck eight or ten feet from the barn; the chute was a "couple of feet" short; defendant stated he would get, in the truck and back up a couple of feet; plaintiff was to stay right there behind the truck and "holler" at defendant when he got back far enough; defendant started backing up and when he got back far enough, plaintiff hollered a couple of times; defendant just kept coming; there was no use getting out of the way because he was supposed to come back only a couple of feet, but he came eight or ten feet back; plaintiff saw defendant coming and he was "scared so bad" he just "froze like he couldn't move"; then defendant hit plaintiff; plaintiff was toward the righthand side of the truck and he was struck in the chest.

Some pictures were introduced showing a large upright 12 x 12 inch timber which tilted so that a plumb line from the top of the timber to the ground showed a distance of 11½ inches from the bottom of the timber to the ground end of the plumb line. There had been a 1 x 12 inch board nailed onto the timber. The top of the truck had struck this 1 x 12 inch board with such force that it caused it to splinter.

Lawrence Gilmore testified on behalf of plaintiff. He was the owner of a one-half interest in the hogs; he and defendant had loaded the hogs after plaintiff was injured; defendant told him he did not know what had happened; there were some weeds down there and he could not see what he was doing; defendant said the old man (meaning plaintiff) did not have any business being down there anyway; when he and defendant arrived at the scene there were tracks; there was a clear cleat mark "like where a wheel had spun when it hit the barn and then stopped"; he noticed where the top of the truck rack had broken the 1 x 12 inch board; at this time defendant started backing the truck again and Gilmore hollered at him five times to stop and finally defendant stopped; defendant told Gilmore he could not hear anything with the motor running.

To this evidence defendant lodged a general demurrer and a

special demurrer on the grounds that the evidence affirmatively showed contributory negligence on the part of plaintiff as a matter of law, which demurrers the trial court overruled. In the briefs both contributory negligence and assumption of risk were argued on this point. The evidence amply supported the allegations of the petition and applying the rule that in testing the sufficiency of evidence when attacked by demurrer all the evidence will be considered as true, it will not be weighed as to any contradictory parts or discrepancies therein between direct or cross-examination, or among the witnesses, and every favorable inference to be drawn therefrom will be given to such evidence (*Koch v. Suttle,* 180 Kan. 603, 606, 306 P. 2d 123; *Boggs v. City of Augusta,* 180 Kan. 831, 308 P. 2d 72), we can only conclude the evidence was sufficient and the trial court was correct in its order overruling defendant's demurrer thereto.

Without detailing the testimony of defendant, we think it negatived the presence of assumption of risk so far as the record before us is concerned. There was no showing that plaintiff was an employee of defendant and we think the trial court was correct in refusing the requested instruction to the effect that if the jury found plaintiff had voluntarily and unnecessarily placed himself in a position of peril, or in an obviously dangerous position in carrying out defendant's direction without protest, then the jury should find for the defendant. Likewise, the trial court was justified in concluding there was no evidence in the record to support the other requested instruction to the effect that both parties had that knowledge common to all mankind of what is inherently dangerous and perilous. The evidence did not show there was any inherently dangerous and perilous condition *until* the truck had exceeded the distance that it was supposed to cover in its backing operation. (65 C. J. S., Negligence, §§ 118, 119, pp. 711-720; *Wainscott v. Carlson Construction Co.,* 179 Kan. 410, 295 P. 2d 649.)

Certain of the trial court's instructions were objected to by defendant but when the instructions, which included one on unavoidable accident, are all considered together and in the light of each other, they fully covered the case. The instructions seem as fair to one party as to the other and are well supported by the pleadings and evidence. It should be noted the trial court was requested to work out, with the assistance of both counsel, the instruction on voluntary assumption of risk but it is admitted this request and the

discussion thereon do not appear in the record and we, therefore, cannot consider them. (*Baker v. Western Cas. & Surety Co.,* 164 Kan. 376, 190 P. 2d 850; *Hill v. Hill,* 170 Kan. 721, 726, 228 P. 2d 713; *State v. Graham,* 172 Kan. 627, 629, 242 P. 2d 1067.)

Before leaving this part of the controversy on the trial court's refusal to give requested instructions and the purported erroneous instructions given, we wish to say we are of the opinion the trial court fully instructed on contributory negligence and no prejudice was shown to defendant's rights in the fact that it did not pinpoint defendant's theory of assumption of risk. Instructions to a jury must be based on the issues as they actually exist and not on a litigant's theory of issues which are beneficial to his side of the lawsuit.

Other specifications of error have regard to special questions. Defendant requested some ten special questions, the first two of which were refused by the trial court. There was no error by reason of the refusal. The remaining eight requested questions, with slight revision in only one, were given by the court and answered by the jury in plaintiff's favor. Then defendant asked to have some of the answers stricken. Those answers were supported by substantial competent evidence and they will not be disturbed on appeal. (*Spencer v. Supernois,* 176 Kan. 135, 268 P. 2d 946; *Cooper v. Motors Insurance Corporation,* 180 Kan. 770, 308 P. 2d 131.) In requesting a trial court to ask special questions, a party must not only comply with the statute (G. S. 1949, 60-2918) but he must also consider the result that even though the jury's answers are adverse to his side of the litigation, he is bound by those answers and will not be heard to complain if there is any substantial competent evidence to support them.

Defendant claims that he was entitled to judgment on the special findings of the jury. The trial court did not agree and neither do we. Defendant concedes the answers were supported by evidence and without setting the amount, we conclude they were consistent with each other and with the general verdict. (*McCracken v. Stewart,* 170 Kan. 129, 135, 223 P. 2d 963; *Knoche v. Meyer Sanitary Milk Co.,* 177 Kan. 423, 428, 280 P. 2d 605.)

In regard to the trial court's overruling and denying defendant's motion for new trial, we are of the opinion that in view of what has been said there was no error in that ruling.

The judgment is affirmed.