Nos. 42,727 and 42,728 (Consolidated)

JUDY GOLDMAN, *Appellee,* v. GEORGE BENNETT, d/b/a LAKESIDE
ENTERPRISES, *Appellant.*

MANUEL GOLDMAN, *Appellee,* v. GEORGE BENNETT, d/b/a LAKESIDE
ENTERPRISES, *Appellant.*

(371 P. 2d 108)

Opinion filed May 5, 1962.

*N. E. Snyder,* of Kansas City, argued the cause, and *William A. Rundle, Jr.,* and *Thomas D. Cochran,* of Kansas City, Missouri, were with him on the briefs for appellant.

*Bill E. Fabian,* of Kansas City, argued the cause, and *John E. Blake, Robert E. Fabian* and *John E. Blake, Jr.,* of Kansas City, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: These actions were to recover damages for injuries sustained by plaintiff, Judy Goldman, while ice-skating on the defendant's rink, and by her father, Manuel Goldman, for hospital and medical expenses incurred for her care and treatment. The actions were consolidated in the district court. Trial was by a jury which returned a verdict in favor of the plaintiffs in the sums of $5,000 and $832, respectively. Defendant's post-trial motions to vacate and set aside certain special findings, for judgment on certain special findings, and for a new trial were overruled. The defendant perfected separate appeals which were ordered consolidated. The parties have stipulated that the decision in Judy Goldman's appeal, No. 42,727, would control appeal No. 42,728.

On January 6, 1957, the date of the accident, Judy Goldman was fifteen years of age, and a sophomore in high school. During the school year preceding the accident she played baseball, basketball, hockey, participated in intramurals, and she swam. For three or four years prior to the accident she had roller-skated in the neighborhood and at skating rinks.

A little before noon on the date of the accident, plaintiff went to the defendant's skating rink to ice-skate for the first time. She was accompanied by her cousin and her cousin's fiance, Robert Mandelbaum. The skating session—a two-hour period—was in progress when they arrived. After paying the admission fee plaintiff rented a pair of ice skates. The skates, the only kind rented at the rink, were of the kind designed for figure skating, that is, with the front of each blade curled up and notched like saw teeth. Mandelbaum advised plaintiff to hold on to the handrail at first and, since she had previously roller-skated, when she felt she could control her skates, to leave the rail. Plaintiff testified that she skated close to the rail for about the first forty minutes; that when she started skating she did not notice anything on the ice, but after she had skated for about twenty minutes and had made five or six circuits around the rink she noticed several holes in the ice and candy wrappers on the ice; that there were not as many skaters when she first arrived as there were toward the middle or latter part of the session when the people started coming in a steady stream and the rink became crowded; that most of the slow skaters stayed near the outside of the rink, but the more proficient skaters stayed in the center; that on occasions fancy skaters would leave the center of the rink and go by the slow skaters real fast, racing around the rink; that she was bumped or pushed several times by the fast skaters but never lost her balance; that because of other athletic endeavors she could "keep her balance" and to her "ice-skating was no challenge," and that about the middle of the session she skated without the aid of the handrail, noticing, however, that the ice was getting pretty rough.

Plaintiff further testified that after the rink got crowded she could not see the holes to dodge them as she could before, but she knew they were there because she had seen them; that the holes looked like someone had dug a skate into them; that there were a lot of scratch marks on the ice, and that she had skated about fifteen or twenty minutes without the use of the handrail when she fell. She described her fall as follows:

". . . I was skating around the rink and I was doing pretty good, too, for a beginner. I didn't lose my balance much, and I was going around the rink, and all of a sudden my skate stopped, and it stopped on a piece of paper or a hole. I know it did. And then, before I could move or anything, somebody bumped against me and I fell there. . . ."

Plaintiff sat on the ice crying for two or three minutes before anyone came to her aid, then two skaters came to her assistance and half skated and half carried her across the greater length of the rink to a chair. Plaintiff did not actually see or know of her own knowledge which it was that caused her skate to stop but she thought it had to be "either a hole or a piece of paper," and she answered the following questions:

"Q. . . . And you continued to skate during this 25 or 40 minute period, knowing that these things were there, did you not? A. I knew they were there, and when I was skating the earlier part it wasn't very crowded. After awhile it got crowded and you couldn't—you didn't notice them as much because you were just too excited about dodging everybody coming by, and *I didn't think it was dangerous, either.* Q. Did you know there was a possibility you might catch your skate on them and fall? A. No, I didn't, *and I didn't know there was any danger,* or else I certainly wouldn't have skated on. Q. You didn't think about you might possibly catch your skate on them? A. *No, I didn't think there was any danger.* If I did, I certainly wouldn't have skated on. I certainly didn't want this accident to happen."

Plaintiff testified she did not know who bumped into her except it was a fast skater who came from behind, and after bumping her, skated on, and that at no time did she observe anyone on the ice supervising or managing the skaters, or to whom she could have reported the holes and the debris.

The only evidence offered by the defendant was the medical report of an orthopedic surgeon whose conclusion was that the plaintiff had made a good recovery from surgery with no apparent residual other than the operative scar on her left knee.

As previously indicated, the jury returned verdicts for the plaintiffs, and answered special questions submitted by the court as follows:

"1. Did plaintiff Judy Goldman know and realize that there were holes in the ice and debris on the ice before she fell? Answer: Yes. 2. Did plaintiff Judy Goldman exercise ordinary care for her own safety? Answer: Yes. 3. Did the defendant George Bennett, through his agent or employee, have constructive notice of debris on the ice or holes in it before Judy Goldman fell—that is, should he, with proper inspection and supervision, have known of these conditions? Answer: Yes. 4. If you find that defendant had constructive notice, then state the length of time the condition existed before

Judy Goldman fell. Answer: Approx. 45 minutes to an hour. 5. What was the proximate cause of the fall of plaintiff Judy Goldman on January 6, 1957? Answer: Rough skating surfaces & debris on the ice caused her skates to stop suddenly causing her to lose her balance coupled with a collision from the rear by another skater knocking her to the ice. We feel a definite lack of supervision of the skating session. 6. Was defendant George Bennett, through his agent or employee, negligent? Answer: Yes. 7. If your answer to Question 6 is 'yes', then state what that negligence was. Answer: Lack of adequate & proper supervision."

The defendant principally argues that the plaintiff assumed the risk of the injury she received by continuing to skate after she saw the holes in the ice and the debris thereon. The point is not well taken. The plaintiff was a business invitee, and had gone to the ice-skating rink to skate for the first time. She had a right to assume the defendant would provide her a reasonably safe place to skate. The defendant, as owner of the rink, was not an insurer of plaintiff's safety against the wrongful acts of fellow patrons (*Klish v. Alaskan Amusement Co.*, 153 Kan. 93, 109 P. 2d 75; *Hickey v. Fox-Ozark Theatres Corp.*, 156 Kan. 137, 131 P. 2d 671), but he could not without liability permit activities of fellow patrons, which were dangerous to other patrons, to continue after he knew, or by the exercise of reasonable care should have known, of such activities. (*Cale v. Johnson*, 177 Kan. 576, 580, 280 P. 2d 588; *Little v. Butner*, 186 Kan. 75, 80, 348 P. 2d 1022; *Levy v. Jacobs*, 228 N. Y. S. 229; *Hughes v. St. Louis Natl. League Baseball Club, Inc.*, 359 Mo. 993, 224 S. W. 2d 989; Restatement of the Law, Torts, § 348.)

Counsel for the defendant makes an issue of the fact that plaintiff knew there were holes and paper on the ice and as the rink became crowded, it became more difficult to avoid the holes and paper, and that the jury found she knew and realized there were holes and debris on the ice before she fell. Be that as it may, there is no evidence in the record to indicate that the plaintiff knew and *appreciated* the danger and the risk which the defendant claims she assumed. Indeed, the evidence was that while she continued to skate during a twenty-five to forty minute period knowing of the holes in the ice and the debris thereon, she did not think it was dangerous. The doctrine of assumption of risk is not to be confused with contributory negligence. It arises through implied contract of assuming the risk of a *known danger*. The essence of it is venturousness; it embraces a mental state of willingness, and it denies defendant's negligence while contributory negligence admits de-

fendant's negligence but denies it is the proximate cause of the accident (*Kleppe v. Prawl,* 181 Kan. 590, 594, 313 P. 2d 227, 63 A. L. R. 2d 175; *Taylor v. Hostetler,* 186 Kan. 788, 800, 352 P. 2d 1042; *Shufelberger v. Worden,* 189 Kan. 379, 384, 369 P. 2d 382).

In *Kleppe v. Prawl,* supra, the plaintiff was standing between a truck being backed by defendant and a barn. The defendant was supposed to have backed the truck "a couple of feet" so that a chute on the rear of the truck would come close enough to the barn doorway so that hogs could be loaded onto the truck. After the defendant had backed the truck a couple of feet, plaintiff shouted for him to halt. Defendant paid no attention, but continued to back the truck and crushed plaintiff against the barn. As a defense to plaintiff's petition and evidence, defendant maintained that the danger was inherent and obvious to plaintiff to stand between a moving truck and a barn and that plaintiff therefore assumed the risk. It was said the evidence did not show there was any inherently dangerous and perilous condition *until* the truck had exceeded the distance it was supposed to cover in its backing operation. And so here. While the plaintiff testified and the jury found that she knew of the holes in the ice and the debris thereon, those conditions were not in and of themselves the cause of plaintiff's fall. Her injury was the result of a combination of circumstances. There was no evidence to show any inherently dangerous and perilous condition until the different elements combined, namely, catching her skate on a hole or piece of paper, being thrown off balance thereby, simultaneously being struck by a fast skater, all of which caused her fall and injury. Until that moment, the plaintiff's knowledge of those conditions was one of merely noting them.

This action was pleaded and tried upon the theory that adequate and proper supervision of the skating session by the defendant would have prevented the chain of circumstances which, in their entirety, were the proximate cause of plaintiff's fall. The jury found that the defendant was negligent in failing to provide adequate and proper supervision of the skating session, and there was substantial evidence to support the finding. Throughout the skating session professional caliber skaters were performing acrobatic and figure-skating maneuvers in a fast and reckless manner while intermingling with patrons of lesser talent near the outside of the rink, bumping against them and knocking them to the ice, one of whom bumped the plaintiff from the rear when her skate was unnaturally

stopped by either a hole or a piece of paper on the ice, and the defendant knew, or with the exercise of reasonable care should have known, that such conduct and the condition of the ice would likely produce harm and injury to other patrons (*Cale v. Johnson,* supra).

While one who becomes a participant at a skating session at a public ice-skating rink for hire assumes all ordinary and normal hazards incident to the sport, the law does not require him to assume the negligence of the proprietor in failing to provide adequate and proper supervision of the skating session. The doctrine of assumption of risk was not applicable under the facts and circumstances of this case, and the district court did not err in any of the particulars urged by the defendant.

The defendant next asserts that the plaintiff was guilty of contributory negligence as a matter of law, which barred her recovery. We are not persuaded. While the occasion which produced this controversy was the plaintiff's first venture at ice-skating, the evidence was that she was an active, agile young person with considerable athletic ability; that she held onto the rail for a number of turns around the rink until she learned to control her skates; that although she saw debris and holes in the ice after several circuits of the rink and saw fast skaters going by, she had no difficulty in avoiding the debris or successfully maintaining her balance when brushed by such skaters for approximately forty minutes of the skating session; that she did not venture into the center of the rink where the fast skaters mostly stayed, but kept to the outside to avoid them, and that she had not fallen before the fall which produced her injury. All of the plaintiff's testimony on cross-examination was to the same effect.

Whether, under the circumstances, the plaintiff exercised due care was a proper question to be submitted to the jury. Negligence implies some act of commission or omission wrongful in itself. In essence, it is the lack of due care. The instances are relatively rare when the facts are such that the court should say that as a matter of law the negligence alleged has been established. Before the court should make such a holding, the evidence should be so clear that reasonable minds considering it, could have but one opinion, namely, that the party was negligent. (*Lawrence v. Kansas Power & Light Co.,* 167 Kan. 45, 49, 204 P. 2d 752.)

The issue was such that reasonable minds might differ, and the question was properly submitted to the triers of the fact. There was

substantial evidence to support the finding that the plaintiff exercised ordinary care for her own safety, the effect of which was that by continuing to skate she did not run a risk known to be greater than prudently could be incurred under the circumstances, and the defendant cannot now challenge the jury's answer.

It is next contended the district court erred in refusing the defendant's requested instruction to the effect that a person who voluntarily pursues a course which he knows to be dangerous would be precluded from recovery. In refusing the instruction, the court said:

"The Court thinks that is covered when I say it is negligence for a business invitee to fail to look out for danger and to take precautionary steps if an ordinary prudent person would have done so under the same or similar circumstances. I think that adequately takes care of it."

In *Wainscott v. Carlson Construction Co.*, 179 Kan. 410, 295 P. 2d 649, it was held:

"It is not in every instance where one exposes himself to known danger that he is denied a right to recover, but only in that class of cases where the danger is so obvious and imminent that a person of ordinary prudence would not subject himself to it.

"Mere knowledge of the danger of doing a certain act without a full appreciation of the risk involved is not sufficient to preclude a plaintiff from recovery, even though there may be added to the knowledge of danger a comprehension of some risk. Moreover, knowledge of the offending instrumentality does not constitute contributory negligence as a matter of law." (Syl. ¶¶ 1, 2.)

No error was committed. The same argument with respect to the doctrine of assumption of risk applies here. The element of knowledge and full appreciation of the risk involved is essential for application of the doctrine.

Before reaching the conclusions heretofore announced the authorities cited by the defendant were fully examined, but running through them are factual situations which do not permit application to the case at bar. Other points have been raised by the parties, but it is unnecessary to discuss them. What has been said disposes of the appeal.

The judgment is affirmed.

Parker, C. J., and Price, J., dissent.