No. 56,923

HAROLD L. OWINGS and DIANE M. OWINGS, *Plaintiffs/Appellants*, v. TERRY V. GIFFORD, *Defendant*, v. WESTERN CASUALTY & SURETY COMPANY, *Third Party Defendant/Appellee*.

(697 P.2d 865)

Opinion filed April 5, 1985.

*Rod L. Richardson*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause and *Jeffrey L. Lauersdorf*, of the same firm, was with him on the briefs for appellants.

*Hal E. Pierce*, of Couch, Strausbaugh & Pierce, Chartered, of Overland Park, argued the cause, and *Mark Beam-Ward*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: This is an appeal from the district court's granting of summary judgment pursuant to K.S.A. 60-254(b) in favor of third-party defendant, Western Casualty Company, on defendant's third-party petition.

Harold and Diane Owings purchased a home from a contractor/builder, Terry Gifford d/b/a Regal Construction Company, (Gifford). The house was one of several constructed by Gifford and various subcontractors. Shortly after the Owings moved into their new home, they discovered several major flaws in the structure. Unable to obtain satisfaction from Gifford, the Owings

filed an eight-count petition against Gifford alleging Gifford breached the warranty of habitability, acted negligently, violated the Kansas Consumer Protection Act, and committed fraud and a breach of contract.

The Owings claimed Gifford's negligence involved affirmative acts of *commission,* including building their home in a poor and unworkmanlike manner, use of improper materials, and use of practices not in general conformity with the accepted construction and trade practices used at that time in Johnson County, Kansas. The Owings also alleged defendant's negligence involved actions of *omission,* including failure to adequately inspect and test the soil to determine its supportive characteristics for the structure, failure to install a foundation drainage, failure to secure a final building inspection and failure to deliver an occupancy permit required under the laws of the City of Overland Park, Kansas.

After being served with the Owings' petition against him, Gifford immediately notified his insurance company, Western Casualty and Surety Company (Western), of the pending suit. After its investigation, Western notified Gifford there was no coverage afforded him under the comprehensive liability policy he had purchased from Western. Western would neither defend the suit nor pay for any damages due the Owings as a result of Gifford's acts or failure to act when constructing the Owings' home.

Claiming coverage under Western's comprehensive liability policy, Gifford impleaded Western as a third-party defendant. Western filed a motion for summary judgment. The district court sustained Western's motion for summary judgment, holding the insurance policy purchased by Gifford did not provide coverage for the allegations contained in the Owings' petition. Both Gifford and the Owings appealed. Gifford neither filed a brief nor argued his cause before this court.

The Owings claim the district court erred in granting Western's motion for summary judgment against its insured's third-party petition. Summary judgments in Kansas are governed by K.S.A. 60-256. Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law. *Zehring v. Wickham*, 232 Kan. 704, Syl. ¶ 1, 658 P.2d 1004 (1983).

The Owings agree the comprehensive liability policy in question does not provide coverage for property damage arising from insured's negligent affirmative acts or *commissions*. However, the Owings contend the comprehensive liability policies provide coverage for property damage arising from defendant's acts of *omission* in constructing plaintiffs' home.

The Owings are not contending there is an issue of material fact. However, they contend the district court erred in determining as a matter of law Western's policy excluded coverage for the property damage claimed by the Owings against Western's insured.

Western's policy provided:

1. COVERAGE A—BODILY INJURY LIABILITY
   COVERAGE B—PROPERTY DAMAGE LIABILITY
"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
   Coverage A. bodily injury or
   Coverage B. property damage
to which this policy applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.
"Exclusions
   "This policy does not apply:
"(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but with respect to bodily injury or property damage occurring while work performed by or on behalf of the named insured is in progress, this exclusion does not apply to a warranty that such work will be done in a workmanlike manner;
. . . .
"(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."

The Owings initially focus on exclusion (o), arguing it does not preclude coverage for property damage arising from negligent omissions of the insured. They contend exclusions in an insurance policy require a narrow construction on the theory that an insurer, having expressed coverage through broad promises,

assumes a duty to define any limitation on that coverage in clear, explicit terms. *Upland Mutual Insurance, Inc. v. Noel,* 214 Kan. 145, 149, 519 P.2d 737 (1974). Furthermore, if terms of an insurance policy are ambiguous and susceptible to more than one meaning, the meaning most favorable to the insured must prevail. *Fancher v. Carson-Campbell, Inc.,* 216 Kan. 141, 146, 530 P.2d 1225 (1975).

However, in a prior decision this court construed this same exclusion as used in another liability insurance policy to be clear and unambiguous. See *Green Construction Co., Inc. v. Liberty Mutual Ins. Co.,* 213 Kan. 393, 517 P.2d 563 (1973).

In *Green,* Liberty Mutual Insurance Company (Liberty) issued a comprehensive general liability insurance policy to B.A. Green Construction Company containing exclusion (m), the same exclusion as exclusion (o) in the present case. Green was a general contractor who contracted to build a library on the Kansas University campus. Green subcontracted the mechanical work to Huxtable, who installed the heating and air conditioning system. After the library was partially occupied the air conditioning malfunctioned, causing water to condense on the walls and ceiling of the library, extensively damaging the interior of the building. Green made repairs and charged the cost of the repairs against Huxtable as an offset of the money Green owed Huxtable. Huxtable sued Green for the balance of the contract price. Green counterclaimed for the cost of repairs, claiming negligence. Huxtable defended against the counterclaim alleging contributory negligence. Green demanded Liberty defend the action and Liberty refused, contending the policy did not provide coverage for the occurrence.

The *Green* court addressed the same exclusion claimed by Western in this appeal. In *Green,* Liberty contended the library was the work product of Green and the damage done was to work performed by or on behalf of Green. Thus, coverage was excluded.

The *Green* court agreed, relying on *Kendall Plumbing, Inc. v. St. Paul Mercury Ins. Co.,* 189 Kan. 528, 370 P.2d 396 (1962). It held that the language of the exclusion was unambiguous and should be enforced according to its terms. The entire library building was the work product of Green and the word "work" as used in the exclusion could only refer to the building being

constructed by Green. Therefore, the exclusion eliminated coverage for any damage to the library for which Green could be liable under any theory. Thus, there was no coverage for damage to the library arising out of the negligence of Green or Huxtable, the subcontractor. In so holding this court also relied on *Haugan et al. v. Home Indemnity Co. et al.*, 86 S.D. 406, 197 N.W.2d 18 (1972), and *Home Indemnity v. Miller*, 399 F.2d 78 (8th Cir. 1968), which stated the exclusion applied to claims for damages arising from the internal defectiveness of the insured's own work product.

For cases where other jurisdictions addressing similar exclusions in liability insurance contracts have reached the same conclusion, see *T.E. Ibberson Co. v. American & Foreign Ins.*, 346 N.W.2d 659 (Minn. App. 1984); *Nationwide Mut. Ins. v. Wenger*, 222 Va. 263, 278 S.E.2d 874 (1981); *Indiana Ins. Co. v. DeZutti*, 408 N.E.2d 1275 (Ind. 1980); cf. *Ohio Cas. Ins. Co. v. Terrace Enterprises, Inc.*, 260 N.W.2d 450 (Minn. 1977).

The preceding cases indicate the policy exclusion was intended to exclude coverage for property damage to the residence constructed by the insured contractor when the insured's faulty construction gives rise to the damage. Generally, negligence is the lack of due care and encompasses an act of commission or omission, wrongful in itself. *Goldman v. Bennett*, 189 Kan. 681, 686, 371 P.2d 108 (1962). Therefore, the exclusion precludes coverage to the residence constructed by the insured when the insured's faulty construction, including commissions or omissions, gives rise to the damage. Thus, the policies exclude coverage of property damage to plaintiffs' residence arising out of negligent commissions or omissions of the insured.

When a contractor builds a home, warranties arise both under his contract with the buyer and by operation of tort law. Since a builder can control the quality of his work, he is liable to the buyer when the work is faulty. The risk that the builder may incur liability under warranty is a normal part of doing business.

The builder may obtain a performance bond or purchase a guarantee of contractual performance for repair or replacement of faulty workmanship.

Under operation of law, a second type of risk that arises is injury to people and damage to property other than the work performed. Unlike the first type of risk, where liability is limited

to the cost of replacement or repair, the duty imposed by law (tort liability) subjects the builder to unlimited liability. For this risk the builder purchases liability insurance for bodily injury or property damage. Provisions of a general liability policy provide coverage only if the insured work or product actively malfunctions, causing injury to an individual or damage to another's property.

Where a general liability insurance policy contains a clause excluding property damage "to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith," the insurance policy is not a performance bond or a guarantee of contract performance. A house built or being constructed by an insured builder is the work product of the builder and under the exclusion clause of the policy no coverage is provided the insured for damages due to faulty construction.

The Owings argue Western has ignored exclusion (a) which states:

"Exclusions
   This policy does not apply:
(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but with respect to bodily injury or property damage occurring while work performed by or on behalf of the named insured is in progress, *this exclusion does not apply to a warranty that such work will be done in a workmanlike manner . . . ."* (Emphasis supplied.)

Therefore, plaintiffs assert warranties are not precluded from coverage. Furthermore, plaintiffs' petition alleges that the insured builder, Gifford, by negligent acts of omission, breached his implied warranties to the purchasers of the home.

This exclusion has been read in conjunction with exclusion (o) and explained by various courts. Although the exception in exclusion (a) indicates that the policy covers property damage flowing from a breach of warranty, it does not follow that *all* property damage caused by a breach of warranty is covered under the policy. The property damages covered can only be determined by resort to the contract as a whole, including all exclusionary provisions. *Taylor et al. v. Amer. Underwriters,* 170 Ind. App. 148, 352 N.E.2d 86 (1976); *Bowen v. Farmers Mutual Ins.,* 101 Ind. App. 362, 199 N.E. 426 (1936). Since exclusions (n) and (o) exclude property damage occurring to an insured's prod-

uct or work which is caused by the insured's defective product or workmanship, no coverage is provided for such damage. This is true whether the theory of recovery is breach of warranty or some other basis. Accordingly, we can find no internal ambiguity in exclusion (a). When read in concert with exclusions (n) or (o), we similarly find no ambiguity or conflict. *Indiana Ins. Co. v. DeZutti*, 408 N.E.2d at 1278-79.

When the exclusions are read together, property damage resulting from insured's breach of implied warranty are covered, except where the loss results from the insured's work or the insured's work product. This court has held the entire building is the general contractor's "work product" even though portions of the building were constructed by subcontractors. *Green*, 213 Kan. at 395. Therefore, the damages to the residence resulting from the insured's breach of implied warranties are not covered under the liability policy.

Western raises other issues. There is no necessity to discuss those other issues raised because of our decision to sustain the trial court's granting of summary judgment to Western.

Judgment is affirmed.

PRAGER, J., not participating.