(866 P.2d 1093)
No. 68,844

Utility Maintenance Contractors, Inc., *Appellee/Cross-appellant*, v. West American Insurance Company, *Appellant*, and The Ohio Casualty Insurance Company, *Defendant*, and Insurance Professionals of Kansas, Inc., and Don Luallen Insurance, Inc., *Cross-appellees*.

Petition for review denied 254 Kan. 1010 (1994).

Opinion filed January 14, 1994.

*Hal Pierce* and *Katherine C. Opie*, of Couch, Strausbaugh, Pierce & King, Chartered, of Overland Park, for appellant.

*Gerald D. Lasswell*, of Stinson, Lasswell & Wilson, of Wichita, for appellee/cross-appellant.

*William A. Larson*, of Gehrt & Roberts, Chartered, of Topeka, for cross-appellees.

Before Briscoe, C.J., Larson and Gernon, JJ.

Gernon, J.: West American Insurance Company (West American) appeals a ruling that two exclusionary clauses in a general liability insurance policy it issued did not apply to the facts the parties stipulated to for the purpose of motions before the trial court. The prevailing party in the ruling appealed from, Utility Maintenance Contractors, Inc., (Utility) cross-appeals from summary judgment rulings in favor of Insurance Professionals of Kan-

sas, Inc., (Professionals) and Don Luallen Insurance, Inc. (Luallen).

## FACTS

All parties have agreed to the relevant facts:

"1. On or about August 21, 1991, an official from the City of Offerle contacted Don Coleman of Utility Maintenance about locating and removing a possible sewage clog in the city sewer line.

"2. On or about August 22, 1991, a foreman for Utility Maintenance went to Offerle and checked the sewer line between manhole 17 and manhole 18.

"3. The distance between manhole 17 and manhole 18 is approximately three hundred (300) feet. The sewer line between manhole 17 and manhole 18 is an eight inch clay tile line that is buried from depths of eight to eleven feet.

"4. The Utility Maintenance foreman placed a video camera in the sewer line at manhole 17. The video camera went approximately 115 feet through the sewer line when it located a blockage through the sewer line by tree roots at a 'Y' or 'tap' in the sewer line. This blockage was the only blockage the video camera found in the sewer line in question. The video camera showed that the 115 feet of sewer pipe between manhole 17 and the 'Y' or 'tap' was in good condition and without any blockages.

"5. The foreman for Utility Maintenance then placed a high pressure water jet cleaner in the pipe to blast out the debris and stoppage located approximately 115 feet down the sewer line from manhole 17. The use of the high pressure water jet cleaner removed enough debris to allow water to flow through the sewer pipe.

"6. The high pressure water jet cleaner was then removed from the sewer line and the camera was once again inserted into the sewer line. At the 'Y' or 'tap' located approximately 115 feet from manhole 17, the camera showed that approximately three to four inches of the eight inch diameter sewer pipe was still clogged with roots. The camera showed again that the 'Y' or 'tap' was the only location of a blockage in the sewer line and that the 115 feet of sewer line between the manhole and the 'Y' or 'tap' was in good condition.

"7. The Utility Maintenance foreman reported this root blockage to Mr. Kenny Regnier who was in charge of the sewer system for the City of Offerle. Mr. Regnier then authorized Utility Maintenance to use the water jet root cutter to clear out the roots that were located approximately 115 feet from manhole 17.

"8. Utility Maintenance used an O'Brien water jet root cutter to cut out the roots located approximately 115 feet from manhole 17.

"9. After it was believed that the roots were cleared, the O'Brien water jet root cutter was removed and the camera was placed in the pipe once again to see if the roots had in fact been cleared.

"10. The camera showed that the clay tile line of the pipe had been damaged for approximately 160 feet. A bolt had fallen out of or broken off of the root cutter, while the root cutter was in the sewer line, causing damage to the sewer line.

"11. Demand was made upon Utility Maintenance by the City of Offerle, Kansas, to immediately repair and replace the damaged sewer line.

"12. Utility Maintenance was insured by a West American Insurance Company Commercial General Liability policy, Policy No. 50465600 from March 20, 1991 through March 20, 1992.

"13. The West American Insurance Company policy provides the following exclusions:

'2. Exclusions.
    This insurance does not apply to: ·      ·
    . . .
    J. "Property damage" to:
        . . .
        (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
        (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.'

"14. Utility Maintenance made a demand for coverage under the West American Insurance Company policy. West American Insurance Company denied coverage on the basis of the aforementioned policy exclusions at J.(5) and (6)."

Utility sued West American, as well as Professionals and Luallen, the agents through whom Utility acquired the West American policy. Utility alleged that there was coverage under the policy or, if there was no coverage, that Professionals and Luallen were liable for failure to provide the proper requested coverage.

West American, Professionals, and Luallen filed motions for summary judgment. The issue before the trial court, and now this court, is whether the policy exclusions denied coverage for Utility under the facts here.

The trial court held the exclusions did not apply and, therefore, the policy provided coverage. This ruling made Utility's claims against Professionals· and Luallen moot.

West American moved to dismiss Utility's suit as premature after the trial court denied its motion for summary judgment, contending that the City of Offerle had not filed suit against

Utility. Utility was allowed to amend its petition to one for declaratory judgment rather than for damages. What is being appealed is the grant of declaratory relief to Utility, not a ruling on any summary judgment motion.

## SCOPE OF POLICY EXCLUSIONS 2.J.(5) and (6)

Kansas appellate courts have not considered the specific language at issue here.

Our task here is to interpret a written instrument. Therefore, this court's standard of review is de novo. See *Penalosa Co-op Exchange v. Farmland Mut. Ins. Co.*, 14 Kan. App. 2d 321, 323, 789 P.2d 1196, *rev. denied* 246 Kan. 768 (1990).

In *Owings v. Gifford*, 237 Kan. 89, 697 P.2d 865 (1985), the Kansas Supreme Court considered a work product exclusion similar to one of the clauses here. The *Owings* court distinguished two types of risk involved when a contractor builds a home. The first risk is in the warranties that arise under the contract, and the second risk is tort liability for "injury to people and damage to property other than the work performed." 237 Kan. at 93. The court further stated that exclusions should be read in conjunction with other exclusions and that

"[w]here a general liability insurance policy contains a clause excluding property damage 'to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith,' the insurance policy is not a performance bond or a guarantee of contract performance." 237 Kan. at 94.

Utility, Professionals, and Luallen argue that the facts in this case involve damage to property other than upon which the work was to be performed. They contend that Utility was hired to remove a clog in the sewer line and that the damage did not arise out of its work at the clog site, but was on real property other than "[t]hat particular part of real property on which [Utility] . . . [was] performing operations." They ask us to consider only where Utility was to perform its hired job, not how it got there or whether it was possible to get to the clog any way other than going through the entire length of sewer.

Although Utility, Professionals, and Luallen cite several work product cases to support their argument that 2.J.(5) ought to be strictly construed against West American, our reading of their

cited cases leads us to conclude that the facts involved in those cases are easily distinguishable and the clauses very different from those involved here.

*Goldsberry Operating Co., Inc. v. Cassity*, 367 So. 2d 133 (La. App. 1979), is a case with many similarities to the present case.

Cassity was hired by Goldsberry to perforate 10 feet of a well with an explosive gun. The explosion was planned for 8,000 feet but occurred at 6,900 feet, thus doing damage.

The policy exclusion in *Goldsberry* was very similar to the exclusion here. The policy excluded coverage for property damage done to " 'that particular part of any property . . . upon which operations are being performed by . . . the insured at the time of the property damage.' " 367 So. 2d at 134.

The insurer refused coverage, relying on the exclusion clause. The insured argued that the particular part of the well on which it was performing operations included only the 10-foot section it was hired to perforate, not the entire well. The insured argued that all of the well above 8,000 feet served only as a "vertical *highway*" used to gain access to the 10-foot section. 367 So. 2d at 134.

The court held that "the particular part of the property upon which [the insured] was performing its operations was the entire part of the well where the gun and line traversed and through which the electricity would have passed to detonate the gun." 367 So. 2d at 135. The court held the exclusion applied.

Other cases with different facts which are in accord with the *Goldsberry* rationale include *Continental Graphic Serv. v. Continental Cas. Co.*, 681 F.2d 743 (11th Cir. 1982); *Jet Line Services, Inc. v. American Employers Insurance Co.*, 404 Mass. 706, 537 N.E.2d 107 (1989); and *Vinsant Elec. Contr. v. Aetna Cas. & Sur.*, 530 S.W.2d 76 (Tenn. 1975).

Here, the trial court found that the policy exclusions "do not apply to exclude coverage." There was no finding of ambiguity. We disagree with the trial judge's conclusion and agree with the statement in *Goldsberry* that "[t]he facts of each case will determine upon what particular part of someone's property the insured is performing its operations." 367 So. 2d at 134.

Here, the water jet root cutter had to be maneuvered from a manhole to and through the sewer line to reach the clog site. There is simply no other way to find and clear a clog. We are persuaded that the sewer pipe and the clog point should be viewed as a whole.

The general rule that exclusionary provisions should be strictly construed in favor of the insured is not applicable in this case. "When an insurance contract is not ambiguous, the court may not make another contract for the parties. Its function is to enforce the contract as made." *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 693, 840 P.2d 456 (1992). Ambiguous contracts contain language or provisions of doubtful or conflicting meaning "as gleaned from a natural and reasonable interpretation of its language." 251 Kan. at 693. A natural and reasonable interpretation of section 2.J.(5) reveals no ambiguity.

We are aware of a recent case, also from Louisiana, in which a policy with identical exclusion clauses, and other clauses, was held to be ambiguous and, therefore, coverage was extended. *Serigne v. Wildey*, 612 So. 2d 155 (La. App. 1992). We distinguish *Serigne* from the case here on the basis that in *Serigne* other clauses in the insurance contract were at issue which the court found to be in conflict. The question of whether clauses within the policy conflict with each other is not presented here.

We conclude that section 2.J.(5) excludes coverage for the 115 feet of sewer between manhole 17 and the clog site. Any damage that occurred beyond the clog site, approximately 45 feet by our calculations, may be excluded by section 2.J.(5), depending upon a factual showing on remand that it was the usual and necessary practice under similar circumstances to use the cutter beyond the initial point in the line where the clog is first noted.

The language of section 2.J.(6) applies only to that particular part of property upon which Utility performed work. There has been no stipulation or determination, however, that Utility performed its work incorrectly. That is a factual determination this court cannot make.

The cases cited by West American to support its contention that section 2.J.(6) applies to exclude coverage in this case are factually distinguishable from this case. In *Lusalon, Inc. v. Hartford Accident & Indemnity Co.*, 400 Mass. 767, 511 N.E.2d 595

(1987), there was no dispute between the parties that the insured's unworkmanlike actions caused the damage complained of. In *Bond Bros., Inc. v. Robinson; American Ins. Co.*, 393 Mass 546, 471 N.E.2d 1332 (1984), a trier of fact determined that the insured performed its work negligently. Finally, in *Harrison Plumbing v. New Hampshire Ins.*, 37 Wash. App. 621, 681 P.2d 875 (1984), the insured never completed the work which it was hired to perform, thus resulting in repair and replacement costs.

In these three cases, the insureds clearly performed their work incorrectly, and we conclude these cases have no application given the facts before us.

The declaratory judgment in favor of Utility is reversed. This ruling requires us to reverse the summary judgment ruling in favor of Professionals and Luallen because if the exclusion clauses limit coverage, material issues of fact exist as to whether Professionals and Luallen provided the proper and requested insurance.

Reversed and remanded.