COMMERCE INSURANCE COMPANY *vs.* BETTY CAPLETTE
BUILDERS, INC., & another.[1]

Worcester. November 7, 1994. - April 14, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Insurance*, Comprehensive liability insurance, General liability insurance, Contractor's insurance, Product exclusion. *Words*, "Product."

A provision of a comprehensive general liability policy issued to a real estate developer that excluded coverage for property damage to the insured's "products," defined as "goods or products manufactured [or] sold" by the insured, operated to exclude coverage for damages sustained by certain houses as a result of defective septic systems designed and installed by subcontractors on behalf of the developer, where the houses built and sold by the developer were "products . . . sold" within the meaning of the policy. [90-94]

CIVIL ACTION commenced in the Superior Court Department on April 6, 1990.

The case was heard by *Elizabeth Butler*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Charles B. Straus, III*, for the defendants.

*Philip J. MacCarthy* for the plaintiff.

O'CONNOR, J. The question before us in this appeal is whether a house built and sold by a builder and developer of residential real estate is a "product" for purposes of a product exclusion in the developer's comprehensive general liability insurance policy. We answer that question, "Yes." Accordingly, we affirm the judgment of the Superior Court.

The following are the material undisputed facts. The plaintiff, Commerce Insurance Company (Commerce), issued

---

[1] Doris E. Caplette.

to Doris E. Caplette and, by amendment, to Betty Caplette Builders, Inc. (referred to collectively as "Caplette" unless otherwise indicated), a comprehensive general liability insurance policy (CGL policy) which included a broad form comprehensive general liability endorsement. Section I of the CGL policy provides that:

> "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
> "A. bodily injury or
> "B. property damage
> "to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage . . . ."

The policy contained exclusions to the recited coverage. Among the listed exclusions were those stating that coverage did not apply:

> "(n) to property damage to the named insured's products arising out of such products or any part of such products;
> "(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof . . . ."

The phrase "named insured's products" is defined by the policy to:

> "mean[ ] goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but "named insured's products" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold."

Section VI of the broad form comprehensive general liability endorsement provides that:

> "The insurance for property damage liability applies, subject to the following provisions:
>
> "(A)Exclusion[ ] . . . (o) [is] replaced by the following:
>
> " . . .
>
> "(3) with respect to the completed operations hazard . . . to property damage to work performed by the named insured arising out of such work or any portion thereof. . . ."

Caplette is a real estate developer whose business involves purchasing house lots and building houses on them for sale to the general public. Between 1987 and 1989, four of the owners of houses built and sold by Caplette sued Caplette Builders, Inc., for property damage to their real estate resulting from defective septic systems. The deficiencies in the septic systems were recognized by the homeowners after they had purchased their homes from Caplette. All the septic systems were designed and installed by subcontractors on behalf of Caplette, not by Doris E. Caplette or Betty Caplette Builders, Inc.

Commerce declined to cover Caplette for the property damage to the septic systems of the four houses, and Commerce also declined to provide Caplette with a defense. In declining to provide either indemnification or a defense, Commerce relied on exclusions (n) and (o), the product exclusion and the work exclusion.

Commerce commenced the present action against Caplette in the Superior Court seeking a declaratory judgment that it was not obligated either to defend the homeowners' actions for property damage to their homes or to pay any judgments in those actions. Commerce relied on exclusion (n) and exclusion (o). Caplette answered the complaint and Doris E. Caplette asserted a counterclaim alleging unfair and deceptive settlement practices by Commerce. Thereafter, Caplette

moved for summary judgment on Commerce's complaint, and a judge ordered partial summary judgment in favor of Caplette requiring Commerce to defend the four homeowner actions against Caplette.

Following a trial without jury, another judge declared "that the Commerce Insurance policy issued to Caplette does not cover property damage allegedly caused by Caplette's negligence and breach of various warranties in the construction of four houses." "In light of the foregoing," the judge dismissed the counterclaim and ordered the entry of judgment for Commerce as plaintiff. We transferred the defendant's appeal to this court on our own initiative.

Commerce's comprehensive general liability policy extended protection to Caplette against claims by others arising out of an "occurrence" for which Caplette was responsible. Commerce does not dispute that the claims would be within the insurance coverage were it not for exclusion (n), but contends that coverage of the claims is avoidable because of that exclusionary clause. Exclusion (n) excludes coverage for "property damage to the named insured's products arising out of such products." "[N]amed insured's products" is defined as "goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof." It is Commerce's position that the houses built and sold by Caplette, the insured, are Caplette's "products" within the meaning of the product exclusion. We agree.

Whether a house is a product of the insured builder-vendor for insurance purposes is a question of first impression in this Commonwealth. The majority of jurisdictions which have examined this issue have held that the entire house is the product of the builder. See, e.g., *Gary L. Shaw Builders, Inc.* v. *State Auto. Mut. Ins. Co.*, 182 Ga. App. 220, 223-224 (1987) (house was builder's product); *Indiana Ins. Co.* v. *DeZutti*, 408 N.E.2d 1275, 1280 (Ind. 1980) (because insured was general contractor over construction of entire residence, his finished product was entire house); *Owings* v. *Gifford*, 237 Kan. 89, 93-94 (1985) (house built by insured

builder is product of builder); *Allen* v. *Lawton & Moore Builders, Inc.*, 535 So. 2d 779, 781 (La. Ct. App. 1988) (house and lot were contractor's products); *Gene & Harvey Builders, Inc.* v. *Pennsylvania Mfr. Ass'n Ins. Co.*, 512 Pa. 420, 425 (1986) (house was product of the contractor). See also *U.S. Fire Ins. Co.* v. *Colver*, 600 P.2d 1 (Alaska 1979); *Quality Homes, Inc.* v. *Bituminous Casualty Corp.*, 355 N.W.2d 746 (Minn. Ct. App. 1984); *T.E. Ibberson Co.* v. *American & Foreign Ins. Co.*, 346 N.W.2d 659 (Minn. Ct. App. 1984). The reasoning in these decisions is persuasive, and although we know of one State court which has held the contrary, *Mid-United Contractors, Inc.* v. *Providence Lloyds Ins. Co.*, 754 S.W.2d 824, 826 (Tex. Ct. App. 1988), we follow what is clearly the majority view. As Professor Roger C. Henderson states in a frequently cited article:

> "The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained."

Henderson, Insurance Protection for Products Liability and Completed Operations — What Every Lawyer Should Know, 50 Neb. L. Rev. 415, 441 (1971). Similarly, in his treatise, Liability Insurance, Rowland Long explains that

"[The injury to products or work] exclusion is meant to deny coverage in situations where the insured or its subcontractor has caused damage to the product, work, property or structure. The purpose of the exclusion is to prevent the insured from using its product liability coverage as a form of property insurance to cover the cost of repairing or replacing its own defective products or work.

". . .

"The injury to products or work exclusion is intended to exclude insurance for damage to the insured's product or work, but not for damage caused by the insured's product or work. Thus, the exclusion does not apply where the product or work causes damages to other persons or property. In such a situation, while there would not be coverage for damage to the work or product itself, damages caused by the product to other work or products would be covered.

". . .

"The injury to work or products exclusion is consistent with the goal of the CGL, which is to protect the insured from the claims of injury or damage to others, but not to insure against economic loss sustained by the insured due to repairing or replacing its own defective work or products. . . . "

2 R. Long, Liability Insurance § 11.09(2) (1993). Simply stated, exclusion (n) is intended to exclude coverage for "business risks." When Caplette constructed houses, Caplette assumed the risk of failing to construct in a workmanlike manner and to provide an acceptable end product. The consequence of not performing properly is a part of every business enterprise. Repairing or replacing faulty products is a business expense, ordinarily to be borne by the insured contractor in order to satisfy customers. See *Weedo* v. *Stone-E-Brick, Inc.,* 81 N.J. 233, 239-240 (1979). In the instant case, Caplette could have purchased a builder's risk insurance or a performance bond to protect against damage to

its product. See *Pittsburgh Bridge & Iron Works* v. *Liberty Mut. Ins. Co.*, 444 F.2d 1286, 1289 (3d Cir. 1971); *Owings* v. *Gifford, supra.* Instead, Caplette purchased comprehensive general liability insurance which insures against another form of risk in the insured-contractor's line of work, i.e., injury to people and damage to other property caused by a faulty product or work. See *Weedo, supra* at 239-241.

The underlying claims against Caplette for which insurance coverage is asserted are for deficiencies in the construction of the houses built by Caplette. The homeowners are not seeking damages caused to persons or other property; the damages claimed are solely those sustained to the houses themselves. The houses built and sold by Caplette are Caplette's products. Therefore, under the policy's product exclusion, exclusion (n), no coverage is provided to Caplette for damages suffered by the homeowners in the underlying actions due to Caplette's faulty construction or workmanship.

Caplette argues that the houses Caplette built and sold were not "products" within the policy's product exclusion because real estate is not a "product" in the ordinary sense of the word. Caplette contends that the word "product" means manufactured goods or chattels mass produced in a factory. Caplette argues that, because insurance policy exclusions must be strictly construed, the word "products" should be given a narrow interpretation. We recognize that it is necessary to interpret exclusions reasonably narrowly, but, where the exclusionary language is unambiguous, as it is here, we must give it its intended effect. In the policy's definition of the term "named insured's products," we find the word "sold" — " 'named insured's products' means goods or products manufactured, *sold*, handled or distributed by the named insured" (emphasis added). Caplette constructed and sold the houses to the homeowners in the underlying actions, and therefore those houses are within exclusion (n). The CGL policy was not intended to protect Caplette from the consequences of Caplette's mistakes when the only damage was to the houses Caplette built and sold. See *Gary L. Shaw Builders, Inc.* v. *State Auto Mut. Ins. Co., supra* at 224; *Ow-*

*ings* v. *Gifford, supra* at 93-94. The cases of *Johnson* v. *National Union Fire Ins. Co.*, 56 Misc. 2d 983 (N.Y. Sup. Ct. 1986) and *Kissel* v. *Aetna Casualty & Sur. Co.*, 380 S.W.2d 497 (Mo. Ct. App. 1964), relied on by Caplette to support the argument that real estate is not a "product," are distinguishable. Those cases involved injuries to third persons or damage to other property from the insured's defective workmanship.

We reject Caplette's argument that the broad form property damage endorsement supports Caplette's contention in this case. The broad form property damage endorsement effectively rewrote exclusion (o), so that exclusion (o) relates only to property damage to work actually performed by Caplette, as distinguished from work performed by subcontractors. The argument fails because this case is governed not by exclusion (o) but by exclusion (n). Although the broad form property damage endorsement modified the exclusion (o) (work exclusion), it did not relate to exclusion (n) (product exclusion).

We hold that the houses Caplette built and sold are Caplette's products within the meaning of exclusion (n) and no coverage is provided to Caplette for the damages sustained by the home owners in the underlying actions. Doris E. Caplette does not argue that, in any event, her counterclaim has merit. The declaratory judgment in Commerce's favor on its complaint and the judgment of dismissal of the counterclaim are affirmed.

*So ordered.*