# United States Court of Appeals
## For the First Circuit

No. 22-1462

ADMIRAL INSURANCE COMPANY,
STARR INDEMNITY & LIABILITY COMPANY,
GREAT AMERICAN ASSURANCE COMPANY,

Plaintiffs, Appellees,

v.

TOCCI BUILDING CORPORATION,
TOCCI RESIDENTIAL LLC,
JOHN L. TOCCI, SR.,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Barron, Chief Judge,
Howard and Montecalvo, Circuit Judges.

Jeffrey J. Vita, with whom Kerianne Kane Luckett and Saxe Doernberger & Vita, P.C. were on brief, for appellant.

Eric B. Hermanson, with whom Austin D. Moody and White and Williams LLP were on brief, for appellee.

Joel Lewin, Eric F. Eisenberg, Alexandra A. Gordon, Hinckley Allen & Snyder, LLP on brief for Associated General Contractors of America, Inc. and Associated General Contractors of Massachusetts, Inc., amici curiae.

November 8, 2024

**HOWARD**, <u>Circuit Judge</u>.  This appeal results from a dispute between a general contractor and its insurers over coverage under a commercial general liability ("CGL") insurance policy.  The principal question is whether a general contractor's CGL insurance policy covers damage to a non-defective part of the contractor's project resulting from a subcontractor's defective work on a different part of that project.  The answer to that question dictates whether Admiral Insurance Company ("Admiral")[1] is obligated to defend Tocci Building Corporation, Tocci Residential LLC, and John L. Tocci, Sr., (together, "Tocci") in an underlying lawsuit alleging a range of issues with Tocci's work on a residential construction project.  Applying Massachusetts law, the district court concluded that Admiral had no duty to defend Tocci because the lawsuit did not allege "property damage" caused by an "occurrence," as required for coverage under the Admiral insurance policy.  We are uncertain whether the Massachusetts courts would ultimately agree with the district court's interpretation of those terms, but we affirm the district court's

---

[1] Two other insurers are also affected by our ruling.  Starr Indemnity & Liability Company and Great American Assurance Company intervened in the suit brought by Admiral seeking a declaratory judgment as to its duty to defend.  They provide excess policies that follow form to Admiral's policy.  The parties agree that if Admiral has no duty to defend, then Starr and Great American can have no obligation to provide indemnity coverage either.  (Neither excess policy includes a duty to defend.)  On appeal, Starr and Great American adopted Admiral's briefing by reference, so we focus on Admiral's arguments throughout.

- 3 -

ultimate holding that Admiral has no duty to defend Tocci, albeit for different reasons.

## I.

From 2013 to 2016, Tocci was the construction manager for an apartment project owned by Toll JM EB Residential Urban Renewal LLC ("Toll"). There were several work quality issues and delays on the project, and Toll eventually terminated Tocci in March 2016 for alleged mismanagement of the project. Toll then filed a lawsuit against Tocci in New Jersey state court in July 2016, and Tocci removed it to federal court.

The amended complaint contained five counts: (1) breach of contract; (2) breach of the obligation of good faith and fair dealing; (3) declaratory judgment, for an order that Toll lawfully terminated Tocci for default of its obligations; (4) alter ego liability; and (5) fraud in the inducement. The complaint did not allege negligence or explicitly seek damages based on Tocci damaging property. It did, however, include allegations regarding instances of defective work leading to property damage. During the course of preliminary discovery, it became clear that the allegations included defective work by Tocci's subcontractors resulting in various instances of property damage to non-defective work on the project, including (1) damage to sheetrock resulting from faulty roof work; (2) mold formation resulting from inadequate sheathing and water getting into the building; and (3) damage to

- 4 -

a concrete slab, wood framing, and underground pipes resulting from soil settlement due to improper backfill and soil compaction.

In January 2020, Tocci sought defense and indemnity coverage under the Admiral insurance policies. The most relevant portions of coverage are:

- Admiral will cover "sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage,'" provided that the "property damage" is caused by an "occurrence."

- Admiral has the "right and duty to defend the insured against any 'suit' seeking those damages."

- An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

- "Property damage" is defined as "[a] Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or [b] Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

There are also various exclusions to this coverage, discussed in more depth below.

Admiral denied coverage in March 2020, stating that the action "does not include any allegations that Tocci is liable for property damage caused by an occurrence, as those terms are defined in the policy" and that, even if it did, an exclusion to coverage would apply. After some back-and-forth letters, Admiral commenced this action, seeking a declaratory judgment that it has no obligation to defend or indemnify Tocci in the Toll action under Massachusetts law.

Admiral and Tocci filed cross-motions for partial summary judgment on Count I of Admiral's complaint to determine whether Admiral has a duty to defend Tocci. In March 2022, the district court granted Admiral's motion and denied Tocci's motion, concluding that Admiral has no duty to defend Tocci against the Toll action. The court concluded that the damage alleged in Toll's complaint does not qualify as "property damage" as defined in the policy because the allegations consisted entirely of damage at Tocci's own project. It also concluded that, even if the alleged damage qualified as "property damage," it was not caused by an "occurrence" (as required for coverage under the policy) because faulty workmanship does not constitute an "accident," as required by the definition of "occurrence."

Following the grant of summary judgment for Admiral on Count I, the parties stipulated to a final order on Admiral's other

claims because they would be resolved based on the same legal reasoning.

**II.**

We review an order granting summary judgment de novo. See Quinn v. City of Boston, 325 F.3d 18, 29 (1st Cir. 2003).

The key issue here is whether, under Massachusetts law,[2] a general contractor's CGL policy covers damages to non-defective work resulting from defective work by subcontractors. Tocci does not argue that it should not cover replacement costs for the defective work itself.

There are three steps to this analysis: (1) Do the damages alleged in the action fall within the scope of coverage?; (2) if so, do the exclusions to coverage apply?; and (3) if so, do any exceptions to the exclusions apply? The burden alternates between the insured and insurer at each of these steps: the insured has the burden of establishing the first, the insurer must demonstrate the second, and the insured must establish the third. See John Beaudette, Inc. v. Sentry Ins. A Mut. Co., 94 F. Supp. 2d 77, 134-35 (D. Mass. 1999); Highlands Ins. Co. v. Aerovox Inc., 424 Mass. 226, 231 (1997).

---

[2] In district court, Tocci argued that New Jersey law should apply instead of Massachusetts law. The district court determined that Massachusetts law should apply, and Tocci does not challenge that decision on appeal, so we apply Massachusetts law.

The district court focused only on the first step, concluding that allegations regarding a subcontractor's faulty work causing damage elsewhere on the project is not "property damage" caused by an "occurrence," as defined in the policies. In determining that the alleged damage did not constitute "property damage," the district court focused largely on the background purpose of CGL policies: to provide coverage for tort liability, not contractual liability. See López & Medina Corp. v. Marsh USA, Inc., 667 F.3d 58, 67-69 (1st Cir. 2012); Com. Ins. Co. v. Betty Caplette Builders, Inc., 420 Mass. 87, 90 (1995). Because the alleged damage was all within the contractually covered scope of the project, the district court reasoned, it could not constitute "property damage." See, e.g., Friel Luxury Home Constr., Inc. v. ProBuilders Specialty Ins. Co., No. 09-cv-11036-DPW, 2009 WL 5227893, at *3-4 (D. Mass. Dec. 22, 2009) (faulty roofing work leading to replacement of gutter systems did not constitute "property damage" because the policy was not intended to cover damage to the insured's own work product). In the alternative, the court held that the damage did not result from an "occurrence," basing its reasoning on cases suggesting that faulty workmanship alone is not an accidental occurrence because it is "not an insurable 'fortuitous event,' but a business risk to be borne by the insured." Am. Home Assur. Co. v. AGM Marine Contractors, Inc., 379 F. Supp. 2d 134, 136 (D. Mass. 2005) (quoting 9 Lee R. Russ &

Thomas F. Segalla, Couch on Insurance § 129:11 (3d ed. 1996)), aff'd on other grounds, 467 F.3d 810 (1st Cir. 2006). Because Tocci was hired as a general contractor, the court reasoned, damage to non-defective parts of the project resulting from a subcontractor's faulty work on another part is still damage to Tocci's work product, so it would not be an "occurrence."

Although the district court's reasoning is in line with some prior district court cases, we are more hesitant to predict which way the Massachusetts Supreme Judicial Court ("SJC") -- which has yet to rule on this precise issue -- would come out. As we have recognized before, there is a sharp split of authority on whether damage to non-defective work resulting from a subcontractor's defective work constitutes "property damage" or is caused by an "occurrence." Am. Home Assur. Co., 467 F.3d at 813. As the Tenth Circuit recognized in 2018, "[s]tate supreme courts that have considered the issue since 2012 have reached near unanimity that construction defects can constitute occurrences and contractors have coverage under CGL policies at least for the unexpected damage caused by defective workmanship done by subcontractors." Black & Veatch Corp. v. Aspen Ins. Ltd., 882 F.3d 952, 966 (10th Cir. 2018) (internal quotations and emphasis omitted) (applying New York law); see also Cypress Point Condo. Ass'n, Inc. v. Adria Towers, LLC, 226 N.J. 403, 423 (2016) (noting "a strong recent trend in the case law [of most federal circuit

and state courts] interpret[ing] the term 'occurrence' to encompass unanticipated damage to nondefective property resulting from poor workmanship" (alterations in original) (quoting Greystone Constr. v. Nat'l Fire & Marine Ins. Co., 661 F.3d 1272, 1282-83, 1286 (10th Cir. 2011))). It is certainly possible that the SJC would follow these recent trends. See Caplette, 420 Mass. at 88 (referring to damage to non-defective parts of a house resulting from a subcontractor's defective work on the septic system as "property damage" but determining that an exclusion to coverage applied); Davenport v. U.S. Fid. & Guar. Co., 778 N.E.2d 1038 (Mass. App. Ct. 2002) (table) (noting that although "[f]aulty workmanship, alone, is not an 'occurrence[,]'" coverage would extend to "faulty workmanship which causes an accident" (quoting Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 249 (1979))).

However, as we have done before, we decide to sidestep this issue by focusing on the exclusions, as we view the resolution under Massachusetts law to be more straightforward. See, e.g., Am. Home Assur. Co., 467 F.3d at 813.[3]

There are two "Damage to Property" exclusions outlined in subsection (I)(2)(j) of the policy that Admiral argues apply

---

[3] Contrary to Tocci's assertion that the exclusions are not properly before us, we may affirm the district court on any ground supported by the record. See Stoll v. Principi, 449 F.3d 263, 265 (1st Cir. 2006).

here.  They provide that there is no coverage for "property damage" to:

> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or
> (6) That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

"Your work" is defined, in relevant part, as "[w]ork or operations performed by you or on your behalf[.]"

There is also an exception to the exclusion in (j)(6) providing that it does not apply to "'property damage' included in the 'products-completed operations hazard.'"  The "products-completed operations hazard," in turn, "[i]ncludes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except . . . (2) [w]ork that has not yet been completed or abandoned."  In other words, the coverage exclusion in (j)(6) does not apply if the work has been completed or abandoned.

We focus our analysis on the (j)(6) exclusion because we conclude that it covers the allegations in the Toll complaint.  We do not address whether Admiral has met its burden of showing that the (j)(5) exclusion applies.

The damage at issue here includes (1) damage to sheetrock resulting from faulty roof work; (2) mold formation resulting from

- 11 -

inadequate sheathing and water getting into the building; and (3) damage to a concrete slab, wood framing, and underground pipes resulting from soil settlement due to improper backfill and soil compaction. The question for coverage is whether this qualifies as property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because '[Tocci's] work' was incorrectly performed on it."

Tocci argues that this exception does not apply because it is not seeking coverage for the cost of repairing and replacing the defective work itself (e.g., the faulty roof, inadequate sheathing, or faulty soil fill). It is instead seeking coverage for the resultant property damage caused by its subcontractor's defective work, which it argues would not fall under this exclusion. Applying Massachusetts law, however, we disagree.

In Jet Line Services, Inc. v. American Employers Insurance Co., the SJC interpreted "[t]hat particular part of any property . . . on which operations are being performed" from a prior standard CGL policy to apply to the entire unit of property on which the insured was retained to work. 404 Mass. 706, 711 (1989). There, Jet Line personnel were working on the bottom part of a large underground tank when it exploded, causing damage to the tank in the amount of $400,000. Id. at 706. The insurance policy excluded coverage for damage "to that particular part of any property . . . upon which operations are being performed" by

the insured "at the time of the property damage arising out of such operations." Id. at 711. Jet Line argued that this provision should only exclude coverage for damage to the bottom of the tank, because that was the only portion employees were actively working on at the time of the explosion. Id. The SJC, however, concluded that this provision applied to the entire tank because "Jet Line was retained to clean the entire tank, and it was the entire tank on which operations were being performed within the meaning of the policy language." Id. The SJC noted a series of cases from other courts applying the exclusion to the entire property "[e]ven in cases in which damage occurred to property on only part of which the insured was retained to work." Id. at 711-12. It reasoned: "Where, as here, the insured was retained to perform work on an entire unit of property, and not just a portion of it, the applicability of the exclusion to damage to the entire unit is even more apparent than in cases in which the insured was retained to work on only a part of the unit." Id. at 712.

Although Jet Line interpreted a different exclusion more akin to the (j)(5) exclusion, we find the SJC's broad interpretation of "that particular part of any property . . . on which operations are being performed" to be instructive in analyzing the (j)(6) exclusion as well. Here, Tocci was retained as a general contractor for the entire Toll project, not just a portion of it. As a general contractor, Tocci did not directly

perform construction -- it instead supervised and coordinated the work performed by subcontractors. The complaint alleges damage resulting from Tocci's "incorrectly performed" work on the entire project. Thus, "[t]hat particular part of any property that must be restored, repaired or replaced because '[Tocci's] work' was incorrectly performed on it" refers to the entirety of the project where Tocci was the general contractor charged with supervising and managing the project as a whole.

This conclusion is bolstered by the SJC's overall approach to the purpose and scope of CGL policies. For example, in Caplette, the SJC explained that commercial general liability coverage "is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." 420 Mass. at 91 (quoting Roger C. Henderson, Insurance Protection for Products Liability and Completed Operations -- What Every Lawyer Should Know, 509 Neb. L. Rev. 415, 441 (1971)). Although the SJC has not addressed the exact issue raised here, at least one lower Massachusetts court has concluded -- in line with the purpose articulated in Caplette -- that the "Damage to Property" exclusions apply to unintended damage to the project resulting from faulty workmanship. See E.H. Spencer & Co. v. Essex Ins. Co., 944 N.E.2d 1094 (Mass. App. Ct. 2011) (table) ((j)(5) and (j)(6) exclusions "serve to deny coverage

when the insured builder or its subcontractor has caused any damage to the home itself" where the builder is responsible for the entire home); see also Frankel v. J. Watson Co., Inc., 484 N.E.2d 104, 105-06 (Mass. App. Ct. 1985) (applying exclusion to damage to the work product of the insured); B & T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 41 (1st Cir. 2004) (finding that the business risk exclusions "bar coverage as to any damages to the project itself caused by [the subcontractor's] faulty workmanship"). We concur with that approach here.

Having concluded that Admiral met its burden of establishing that the Toll action only alleges damage falling within the (j)(6) exclusion, we turn to whether Tocci has shown that an exception to that exclusion applies. Highlands Ins. Co., 424 Mass. at 231. Specifically, the question is whether the project was "completed or abandoned" prior to the damage, such that it would fall under the "products-completed operations hazard" and thus be covered. In its reply brief, Tocci did not even attempt to make this argument -- it provided only two paragraphs of explanation on why the (j)(6) exclusion does not apply without even mentioning any exceptions. Had Tocci made some effort at argumentation, that argument likely would have been futile. The "products-completed operations hazard" provides that:

> "[Y]our work" will be deemed completed at the
> earliest of the following times:

- 15 -

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Tocci, however, was terminated from the project and did not complete the work. And it makes no argument that its termination from the project should qualify as "abandonment" under the policy. Cf. Clarendon Am. Ins. Co. v. Gen. Sec. Indem. Co. of Ariz., 124 Cal. Rptr. 3d 1, 9-10 (Cal. Ct. App. 2011) (contractor's work not "abandoned" or "completed" where it was terminated from the project before completing its work). Therefore, Tocci has not met its burden of showing that any exception to the exclusion applies.

We add a coda merely to note that this application of the (j)(6) exclusion does not mean that a general contractor's CGL policy could never cover damage to non-defective work arising from a subcontractor's defective work. If the Massachusetts SJC were to interpret "property damage" caused by an "occurrence" to encompass this type of damage, a general contractor could still

potentially receive coverage if the work is completed or abandoned, as the exception to the exclusion would then apply.[4]

**Affirmed**.

---

[4] We do not canvas all of the policy's exclusions or exceptions to determine if any of them might apply in the alternative. However, we do briefly address one exclusion/exception raised by amici. The Admiral policy includes a coverage exclusion for damage to "your work" arising out of it or any part of it and included in the "products-completed operations hazard," but there is an exception "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Amici argue that the district court's reading of "property damage" and "occurrence" to exclude coverage for the type of damage involved here would make this exclusion/exception pair meaningless surplusage. Admiral responds that this language was added as a backstop for use in jurisdictions that had found there was coverage for this type of claim -- in other words, it may be surplusage in jurisdictions that have concluded such damage is not "property damage" or does not arise from an "occurrence." See, e.g., Oxford Aviation, Inc. v. Glob. Aerospace, Inc., 680 F.3d 85, 88-89 (1st Cir. 2012) (discussing Maine approach). We take no view on the correct interpretive meaning of this exclusion/exception pair but merely note that our reading of the (j)(6) exclusion does not make that exclusion/exception pair a nullity because of the (j)(6) exclusion's exception for completed work.